⌐40  593<br>
|110  155|

</div>

### No. 2,404.

THOMAS GRAHAM, (admr. etc.,) RESPONDENT, v. A. J. PLATE, APPELLANT.

TRADE-MARK.—MEASURE OF DAMAGES.—In an action to recover damages for a violation of plaintiff's trade-mark, the profit actually realized by defendants from the sales of the spurious article under the simulated trademark, is a proper measure of damages, but the recovery of the plaintiff is not limited to the amount of such profits.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

This is an action by the plaintiff for damages for an alleged violation of the trade-mark of his intestate, by the defendant.

Judgment was rendered for plaintiff, and defendant appealed. The other facts are stated in the opinion.

*Crittenden & Wilson*, for Appellant.

In cases of this character, there are usually two sources of damage—first, injury to reputation; and second, loss of

trade and business. The first of these sources only exists when the trade-mark is used on an inferior article; and in the present case, it appears that the pistols sold by the defendant were superior to those manufactured by Deringer. On this point the evidence is direct and conclusive, the witnesses being experts, and unanimous in their testimony; and it follows, of course, that the reputation of Deringer was not injured by the acts of the defendant. The inquiry is limited, therefore, to the loss of trade and business; and there is no evidence of the extent of this loss, or whether any loss was sustained in point of fact. It is not shown that Deringer was deprived of customers, or compelled to reduce his prices; or that more pistols could have been manufactured by him than he did manufacture and actually sell. The case is utterly barren of any evidence on which to base an estimate of damages, unless it be assumed that Deringer was entitled to the profits made by the defendant. It was on this assumption that the damages were assessed by the Court below, and we confidently claim that an error was committed.

The cases in which damages may be recovered in equity are exceptional, and it is well settled that in an equitable action damages cannot be awarded beyond compensation. (Sedg. on Dam. 9 note; 538 note; *Bird* v. *The W. & M. R. R. Co.,* 8 Rich. Eq. 46; *Sanders* v. *Anderson,* 10 Rich. Eq. 232.)

In suits for the infringement of patents, the rule in equity is to decree an account of profits; but there are reasons for this rule which have no application to cases of the violation of a trade-mark. A patent gives the exclusive right to vend the thing patented, and any profit arising from its sale belongs to the patentee, not only legally, but in equity and conscience. The effect of a trade-mark, however, is different. The only exclusive right attaching to it is the right to use it. Placed upon the goods of a manufacturer its purpose is to distinguish them from similar goods manufactured by others, the field of competition so far as the goods are concerned being open to any one who chooses to enter it.

No interest either in the goods, or in the profits arising from them, can be claimed on the ground that the manufacturer has placed upon them the trade-mark of another. The act of affixing the trade-mark does not operate as a transfer; it is simply a wrong for which the party is answerable in damages.

In our view of the matter, the question is one of damages and not of profits; and if we are correct in this, it is clear that the profits do not constitute the measure of damages. The latter may be precisely equal to the former, but they may also be more or less; and damages estimated in this manner would be purely speculative. There may be cases in which it would be proper to speculate in regard to the damages, but if so, they are cases in which the damages are incapable of ascertainment by direct proof, or where punitive or exemplary damages may be recovered; and we have seen that such damages cannot be awarded in equity. Even at law, the fraudulent use of a trade-mark is ground for nominal damages only, unless special damages are proved. (*Blofeld* v. *Payne,* 4 Barn. & Ad. 410.)

It cannot be pretended that the defendant is chargeable with actual fraud. The evidence showed that he acted under the belief that the trade-mark of ⟨Deringer was placed upon the pistols by his authority; and the case is not one in which speculative, or exemplary, damages could be recovered in any forum. (*Nightingale* v. *Scannell,* 18 Cal. 315; *Selden* v. *Cashman.* 20 Cal. 56.)

*Nathaniel Holland,* for Respondent.

The profits made by the defendant by the piracy of the trade-mark has not been rejected as a proper measure of damages in any adjudicated case that I have seen.

In the case of *Coats* v. *Holbrook,* the Judges held that the plaintiff was entitled to an account (this certainly meant an account of the profits) made by the use of the plaintiff's trade-mark, and it seems that the profits was a proper measure of damages. (2 Sandford's Chancery, Rep. page 611, 621.) An order for an account is also proper. Idem 612.)

In that case the profits made by the use of the plaintiff's trade-mark as a measure of damages was not questioned by the counsel, chancellor, or the Court of Errors on appeal; on the contrary, it was held that the plaintiff was entitled to an account, and a decree that the plaintiff pay such damages.

The same rule of damages is adopted in the case of the infringement of patents, where the profits have been made in fraudulently using the patent rights of owners. (*Earle* v. *Sawyer*, 4 Mass., 112.)

It is an equitable rule of damages, in such cases as trademarks wherein profits, by the fraudulent use thereof, have been made; and, by analogy, is adopted in the case of a fraudulent use of a patent right. The counsel has failed to cite a single case wherein it has been disregarded in those classes of cases, either at law or in equity.

It is not established by the evidence, or by the findings of the Court, that the spurious were a superior article; the evidence on that point is conflicting. Besides, a superior article does not go in mitigation of the damages, nor is that fact any defence, nor will it answer either purpose. (*Bloomfield* v. *Payne*, Note to English cases; 2 Sandford's Chancery Rep. page 601.)

If there is such a similarity between the genuine and the spurious article as might impose on ordinary persons, and calculated to mislead the public, the intention to deceive is manifest. (*Schawsbury* v. *Thompson*, Note to English cases; 2 Sandford's Chancery Rep. 602.)

A trade-mark is personal property, and the owner's right of property in it is as complete as that in which he possesses the goods to which it is attached, and the law protects him in the enjoyment of the one as well as the other. (*Deringer* v. *Plate*, 29 Cal. 292.)

The law protects the exclusive right in trade-marks as property. (*Sykes* v. *Sykes*, 3 B. and Cres., 541; *Milerton* v. *Fox*, Mylne and Cr., 384; Upton, Trade-marks, 97, 101, 103. *Howard* v. *Henriques*, 3 Sand. S. C. R., 725.)

CROCKETT J., delivered the opinion of the Court, RHODES, C. J., WALLACE, J., and TEMPLE, J., concurring:

The two grounds chiefly relied upon by the defendant for a reversal of the judgment are: *First*—That the evidence shows that the trade-mark of Henry Deringer was used under a license from him by the defendant; and, *Second*— That there was no proof that Deringer suffered any damage by the use of the trade-mark, and the damages awarded by the Court are excessive.    But neither point is tenable. The evidence in respect to the license, when viewed in the light most favorable for the defendant, was, at least, conflicting.    Deringer testifies    explicitly    that he never granted any such license; and it is highly improbable that he ever did, considering all the circumstances disclosed by the evidence.    I think the finding on this point is fully supported by the weight of evidence.

On the second point there is as little room for doubt.    It clearly appears in proof, that the defendant has made a profit of $1,770 by the sale of pistols made in imitation of the Deringer pistol, and    bearing    Deringer's trade-mark stamped thereon without his consent; and the Court rendered a judgment for this amount against the defendant. It is insisted, on behalf of the defendant, that the profit realized by him from    sales of the    spurious article under the simulated trade-mark, is not a proper measure of damages.    It is conceded that this is the proper rule in an action for damages for the infringement of a patent.    It is said that the patentee, having the exclusive right to manufacture and vend the patented article, is entitled, legally and equitably, to all the profits made by any one from the manufacture and sale of it in violation of the rights of the patentee; but that one, who has acquired an exclusive right to use a particular trade-mark, has not thereby acquired an exclusive right to make and vend the commodity to which the trade-mark is affixed; that any one has the right to make and vend the same commodity, in exact imitation of that made by the owner of the trade-mark, and

that the offence consists, not in imitating the commodity, but the trade-mark only. Hence, it is argued, the profit made by a sale of the commodity ought not to be a measure of the damages; but the party is entitled to only such damages as resulted from a piracy of the trade-mark; and the profit realized by a sale of the commodity does not establish the amount of this damage, which may be greater or less than the amount of the profit. It is evident that the profit realized by the wrong-doer is not the *only* measure of damages. The spurious article may have injured the credit of the genuine one, and the profits of the owner of the trade-mark may have been greatly reduced, whilst the wrong-doer has made little or no profit. But whilst the profit made by the latter does.not limit the recovery, the owner of the trade-mark is entitled to all the profit which was in fact realized. In sales made under a simulated trade-mark it is impossible to decide how much of the profit resulted from the intrinsic value of the commodity in the market, and how much from the credit given to it by the trade-mark. In the very nature of the case it would be impossible to ascertain to what extent he could have effected sales and at what prices except for the use of the trade-mark. No one will deny that on every principle of reason and justice the owner of the trade-mark is entitled to so much of the profit as resulted from the use of the trade-mark. The difficulty lies in ascertaining what proportion of the profit is due to the trade-mark, and what to the intrinsic value of the commodity; and as this cannot be ascertained with any reasonable certainty, it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant. It is the same principle which is applicable to a confusion of goods. If one wrongfully mixes his own goods with those of another, so that they cannot be distinguished and separated, he shall lose the whole, for the reason that the fault is his; and it is but just that he should suffer the loss rather than an innocent party, who in no degree con-

tributed to the wrong. I think, therefore, there was no error in awarding to the plaintiff the whole profit made by the defendant. This view of the law appears to be supported by the following authorities: *Coats* v. *Holbrook*, (2 Sandf. Ch. R., 611); Upton on Trade-Marks (245); *Spottswood* v. *Clark*, (2 Sandf. Ch. R., 629.)

But if there were no authorities on the point, every consideration of reason, justice and sound policy, demands that one who fraudulently uses the trade-mark of another should not be allowed to shield himself from liability for the profit he has made by the use of the trade-mark, on the plea that it is impossible to determine how much of the profit is due to the trade-mark, and how much to the intrinsic value of the commodity. The fact that it is impossible to apportion the profit, renders it just that he should lose the whole.

Judgment affirmed.