In Equity.

W. R. LYNN SHOE COMPANY

*vs.*

THE AUBURN-LYNN SHOE COMPANY et als.

Androscoggin.     Opinion November 16, 1905.

*Trade-Marks. Simulation Thereof. Infringement. Trade-Name. Unfair*
*Competition. Accounting. Rule of Damages. Evidence.*

The general common law proposition upon which all the courts unite is that any words, letters, figures, marks or devices, or combinations of any of these, affixed to a commercial article and used primarily to indicate the origin or ownership of it, either by its own meaning or by association with the article, and not employed merely as descriptive of such article to designate its quality or ingredient only, or solely as a geographical name without any secondary signification, must be recognized as a valid trade-mark.

All the courts agree that one man shall not be permitted, by imitating such distinctive name or mark already employed by another to designate a commercial article, to impose upon the public an article of his own manu-facture as the genuine article of another, for the reason that it would be a fraud upon the manufacturer first appropriating such mark, and also a fraud upon the consumers who have a right to be protected against such imposition.

But while it is undoubtedly the general rule that a geographical name when used alone and affixed to a manufactured article for the purpose of desig-nating the place of its manufacture, or the address of the manufacturer, cannot be appropriated as a trade-mark, it has been held that a geographi-cal name which has long been used to indicate a particular manufactured article, may acquire a secondary meaning as the designation of a particu-lar class of such articles, or the product of a particular manufacturer, and thus either become entitled to protection against infringement as a valid trade-mark, or serve as the basis of a proceeding to prevent unfair compe-tition.

The leading characteristic which distinguishes the trade-mark under consid-eration in the case at bar from the ordinary appropriation of a personal name or geographical term alone as a trade-mark is the fact that in the plaintiff's trade-mark, the geographical and personal names were both

combined in an original device bearing the words "Auburn-Lynn Shoes, Auburn, Maine."

This arbitrary composite name of the plaintiff's product, with the location of the manufactory, expressly added, constituted an impersonal trade-mark. It was a trade-mark which others could not use with equal right and equal truth for the same purpose. The plaintiff had acquired the exclusive right to the use of it, and the adoption by the defendant of the phrase "Auburn-Lynn Shoe Co." as a trade-mark, and corporate name was an unauthorized simulation of the plaintiff's trade-mark and constituted an infringement of the plaintiff's property right without other proof of a fraudulent intent on the part of the defendant.

In contemplation of law two trade-marks are substantially the same if the resemblance between them is so close that it deceives a customer exercising ordinary caution in his dealing and induces him to purchase the goods of one manufacturer for those of another. A critical comparison of two trade-marks placed side by side might disclose differences in both words and devices, but if the similarity is of such a character as to convey a false impression to the minds of ordinarily careful purchasers, respecting the identity of the manufactory or of the goods, it is sufficient to afford ground for redress.

The defendant's aggressions upon the rights of the plaintiff prior to the change of its name to "Lunn & Lynn Shoe Co." constituted not only a violation of the general law covering unfair competition, but also a specific and positive infringement of the plaintiff's exclusive right to the use of a technical trade-mark and trade-name. The law of trade-marks, it is true, is but a special feature of the general law of unfair competition in trade which rests upon the elementary principle that no person has the right to sell his goods for those of another, but there are important distinctions to be observed between them. Unfair competition, unlike the infringement of technical trade-marks, does not necessarily involve the violation of any exclusive right in the plaintiff to the use of the names or symbols employed by the defendant, but there may be unfair competition resulting from an unauthorized and improper use of such names and symbols, although the plaintiff has no property right in them as a trade-mark. Any conduct designed and having a natural tendency to deceive the public and enable one man to dispose of his goods for those of another may be unfair competition and be enjoined, although it is not expressly shown that any particular person was thereby actually deceived. Again, in cases of technical trade-mark, the fraudulent intent to deceive is presumed, while in cases of unfair competition, the plaintiff must prove this intent or show facts and circumstances from which it may be reasonably inferred.

*Held:* That the findings and conclusions of the Justice of the first instance were justified by the facts reported. Therefore all of the provisions of the decree signed by the Justice of the first instance are affirmed without modification except the sixth paragraph in regard to the extent of the accounting to which the plaintiff is entitled.

ACCOUNTING. The rule which now prevails in the equity courts respecting the wrongdoer's accountability for the "profits and damages" resulting from his unlawful acts, requires the master not only to take an account of all profits made by the defendant, but also to make an inquiry in regard to all damages sustained by the plaintiff on account of the defendant's wrongful acts, and since it cannot be ascertained with any reasonable certainty how much of the profit is due to the trade-mark and how much to the intrinsic value of the commodity the whole will be awarded to the plaintiff. It is well settled that the profits recoverable in equity for unfair competition are governed by the same rule as in cases of infringement of trade-marks.

It is therefore further *held:* that the plaintiff is entitled to an accounting not only for the profits realized by the defendant company, from sales of shoes upon which was impressed the trade-mark of the Auburn-Lynn Shoe Company, or any simulated trade-mark using the name "Auburn-Lynn," but also for the profits resulting from the wrongful acts committed by the defendant company in its unfair competition with the plaintiff between the time of its change of name to Lunn & Lynn Shoe Co., and the date of the decree.

In Equity. On appeal by defendants and on exceptions by plaintiff. Appeal dismissed. Exceptions sustained. Cause remanded for a modification of decree in accordance with opinion.

Bill in equity brought by the plaintiff seeking to enjoin the defendants from the use of the name Auburn-Lynn Shoe Company, as an infringement of the trade-mark and trade-name of Auburn-Lynn Shoes adopted by the plaintiff and claimed by it as its exclusive property, and to further restrain the defendants from the use of the name Lunn & Lynn Shoe Company, adopted and used by it subsequent to the commencement of the bill, and from the use of any name similar to either of the above names. This cause was heard on bill, answer and proof, after which a final decree was filed enjoining the defendants from an unlawful use of plaintiff's trade-mark and trade-name. From this decree the defendants appealed. Also the plaintiff took exceptions to that portion of the decree respecting the *extent* of the liability of the defendant company to account for the profits of its business.

The facts, so far as material, are stated in the opinion.

*Oakes, Pulsifer & Ludden, and Enoch Foster,* for plaintiff.

*George C. Wing, George C. Wing, Jr., and White & Carter,* for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. This cause in equity comes to the law court upon the appeal of the defendant corporation from a final decree enjoining it from an unlawful use of the plaintiff's trade-mark and trade-name, and upon the plaintiff's exceptions to that portion of the decree respecting the extent of the liability of the defendant corporation to account for the profits of its business.

The material facts established by the finding of the court are as follows:

The plaintiff corporation has been engaged in business in Auburn, Maine, since 1898, manufacturing ladies' boots and shoes under several styles, among which are "Comfort" and "Common Sense." The corporation was named for W. R. Lynn, who was an experienced manufacturer of shoes, a stockholder in the company until about the first of 1903, and the superintendent of manufacture for several years. He continued his services with the corporation until June 5, 1903. In November, 1899, the corporation adopted the name, "Auburn Lynn Shoes," as the name of a part of its product, and that name was used as a general name for the entire product, for two or three years prior to the bringing of this bill, and became the trade-name of the plaintiff's manufactured product. In June, 1903, the plaintiff adopted a trade-mark in the form of the following device:

A cut was made and the trade-mark printed in a booklet in the early part of 1903, and five thousand copies of it were sent out for the use of the trade. The trade-mark stamp was applied to the plaintiff's shoes for the first time in June, 1903. The plaintiff also extensively used the term "Auburn Lynn Shoes" upon its labels, postal cards, envelopes, bill heads, letter heads, orders, blanks, circulars and

slips, upon which the words Auburn-Lynn Shoes, made by the W. R. Lynn Shoe Co., Auburn, Maine," were made very prominent. In the trade-mark and trade-name, "Auburn-Lynn Shoes," the word "Auburn" signified the city of Auburn, the place of manufacture, and the word "Lynn" signified W. R. Lynn, the superintendent of manufacture in the plaintiff corporation. The defendants Lunn and Reed were salesmen for the plaintiff, each having assigned to him certain territory in the western states.

July 9, 1903, the defendants, Lunn, Lynn and one Sweet, organized the defendant corporation under the name of "The Auburn-Lynn Shoe Company." Lynn was President, Lunn, Treasurer, and Lynn, Lunn, and Sweet directors. The Auburn-Lynn Shoe Company entered into business in Auburn near the place of business of the W. R. Lynn Shoe Company. The names "Auburn" and "Lynn" in the name of the corporation, were intended to represent the name of the city of Auburn, Maine, and the name "Lynn" the defendant W. R. Lynn, who was known as a manufacturer. The defendant company, soon after its organization, adopted the following trade-mark:

and used it upon the first goods sent out under date of September 4, 1903. The Auburn-Lynn Shoe Company made styles of goods similar to those manufactured by the W. R. Lynn Shoe Co., under the name of "Common Sense" and "Old Ladies" shoes, etc., but they were not identical, though many styles were not readily distinguishable. The Auburn-Lynn Shoe Company in July and August, sent letters to the old customers of the plaintiff calling attention to the fact that W. R. Lynn had ceased to be connected with the plaintiff company, and that a new corporation had been formed. Reference was made, however, to the "improved styles" to be manufactured by

the Auburn-Lynn Shoe Company. Circulars, made after this bill was filed and served, were put in the first cartons shipped by the defendant company, and were also sent by mail to the former customers of the W. R. Lynn Shoe Co. They were headed with the trademark of the Auburn-Lynn Shoe Co., and contained no reference to the fact that Mr. Lynn had ceased to be connected with the W. R. Lynn Shoe Co., or that the Auburn-Lynn Shoe Company was not the same manufacturer as the plaintiff. But they contained the following sentence: "Our Common Sense shoes are noted for softness and excellent wearing qualities, and have brought comfort to thousands of women troubled with aching and tender feet." At the time this circular was first issued, the Auburn-Lynn Shoe Company had sold no goods.

As a result of these circumstances, the plaintiff in the fall of 1903 found unusual difficulty in selling in its old territory. Many of its old customers gave orders to the new company, and also much confusion arose in regard to the mail intended to be addressed to the plaintiff. Before the organization of the defendant company, letters intended for the plaintiff had been addressed to the W. R. Lynn Shoe Company and the Auburn-Lynn Shoe Company; but after the new company was organized, it claimed to receive and did receive and open all letters addressed to the Auburn-Lynn Shoe Company. When the Auburn-Lynn Shoe Company commenced business it provided the old customers of the W. R. Lynn Shoe Co., with envelopes addressed to "the Auburn-Lynn Shoe Company," and apparently some of those envelopes were used by the customers of the plaintiff in sending orders and remittances. At least thirty-two letters, between August 4, 1903, and the time of hearing this bill in March, 1904, intended for the plaintiff, but addressed to the Auburn-Lynn Shoe Company, came into the hands of the defendant corporation. They contained orders, checks and general correspondence, some on the defendant's printed, addressed envelopes, and some in writing. They were mostly from old customers, and from the letters the defendant company obtained information concerning the business of the plaintiff.

On the fifteenth day of September, 1903, after this bill was brought, the defendant corporation changed its name to the "Lunn & Lynn

Shoe Co," but it continued to use the old stationery and copies of the printed trade-mark, substituting "Lunn &" for "Auburn," in red ink, the word "Auburn" being crossed, but not obliterated.

The defendant Reed was employed by the defendant company as salesman, and has covered practically the same territory as he did with the old company. It was the understanding that he should visit the old customers of the plaintiff and he did so. The defendant Lunn acted as salesman for the defendant company from September until into November, covering his old territory. After September 22, 1903, no goods were billed by the defendant company under the name of the Auburn-Lynn Shoe Co., but under the name of the Lunn & Lynn Shoe Co. After the change of name one order only appears to have been taken by the defendant's salesman on the order blanks of the Auburn-Lynn Shoe Co.

The inference and legal conclusions deducible from the findings of fact are thus stated by the presiding Judge before whom the testimony was taken. "I rule that the term "Auburn-Lynn Shoes," adopted by the plaintiff and affixed by it to its goods, as a combination was a valid trade-mark, and trade-name, though it was in part geographical. I hold that the plaintiff had acquired by use an exclusive right to the name "Auburn-Lynn shoes" as a trade-mark and trade-name.

I hold that the conduct of the defendant company, in adopting the phrase "Auburn-Lynn Shoe Co." as its trade-mark, and in conducting a shoe business under that corporate name, manufacturing goods similar in style and character to those manufactured by the plaintiff and so nearly so as not to be distinguishable by ordinary observers, advertising and selling those goods in the territory covered by Lunn and Reed, when they were acting for the plaintiff company, in the sale of Auburn-Lynn shoes, constituted unfair competition. I think it was well calculated to mislead customers, notwithstanding the correspondence of the defendant company and its officers to the old customers, in which they stated that a new corporation had been formed, and that Mr. Lynn had ceased to be connected with the plaintiff company. And although the trade customers of the plaintiff might even generally be informed of the situation, the purchasing public, so far

as it appears, was not informed, and could not well be informed, and were liable to be deceived, and the plaintiff, at the same time, injured thereby.    Those who had been in the habit of dealing in and purchasing the Auburn-Lynn Shoes might well understand that the product of the Auburn-Lynn Shoe Company represented the plaintiff's manufacture.    And even after the change of name to Lunn & Lynn Shoe Company, the use of the old literature, so changed as only to indicate that the Lunn and Lynn Shoe Co. was the successor of the Auburn-Lynn Shoe Company, did not help the matter.    If customers could be led to believe that the Auburn-Lynn Shoe Company was the manufacturer of shoes which they had formerly bought as "Auburn-Lynn Shoes," they would not be undeceived by seeing literature in which "Auburn" was changed to "Lunn &" in such a way as to give the impression that the Lunn & Lynn Shoe Company was a successor of the "Auburn-Lynn Shoe Company."

I do not, however, find that the use of the words "Lunn & Lynn Shoe Company" is an infringement upon the plaintiff's rights, except so far as it may, by the manner of use, directly or indirectly, give any impression that it is the successor of the Auburn-Lynn Shoe Company, or had, or has ever had, anything to do with the manufacture of the "Auburn-Lynn Shoes."    I think the defendant company may lawfully make use of the composite name Lunn-Lynn, although Lunn was formerly the salesman, and Lynn the manufacturer of the Auburn-Lynn shoes, and although Lynn is the person for whom the Auburn-Lynn shoes were named in part.    The defendant company must not use its corporate name or conduct its business so as to convey to the trade the impression that its manufactured product is the Auburn-Lynn shoe product of the plaintiff, or that it is the successor of the plaintiff or of the Auburn-Lynn Shoe Company, and it must so conduct its business in this respect that persons of ordinary intelligence may not be deceived.    I think the duty is upon it to take such measures as may be necessary to clearly avoid confusion.

I think the defendant company, its officers, agents and servants, should be enjoined from the use in any way of the trade-mark and trade-name, "Auburn-Lynn Shoes," as applied to its product, and from the use of the name "Auburn-Lynn Shoe Company" in the

manufacture and sale of "Comfort", "Common Sense", "Old Ladies", and other similar shoes, or in business and correspondence connected therewith, and from the use of the name "Lunn & Lynn Shoe Company" as the successors of the Auburn-Lynn Shoe Company, unless in each instance it states clearly that it is not the manufacture of the Auburn-Lynn Shoes.

Thereupon the presiding Justice sustained the bill against the defendant corporation and entered the following decree:

1.   That the plaintiff is entitled to the exclusive use of the name "Auburn-Lynn Shoes" as a trade-mark and a trade-name.

2.   That the defendant corporation, its officers, agents and servants, be and are hereby perpetually enjoined from the use in any way of the trade-mark or trade-name "Auburn-Lynn Shoes" as applied to its product.

3.   That the defendant company, its officers, agents and servants, be and are hereby perpetually enjoined from the use of the name "Auburn-Lynn Shoe Company" in the manufacture and sale of "Comfort" "Common Sense" "Old Ladies" and other similar shoes, and from the use of said name, "Auburn-Lynn Shoe Company" in its business and its correspondence connected therewith.

4.   That the said defendant company, its officers, agents and servants, be and are hereby perpetually enjoined from the use of the name "Lunn & Lynn Shoe Company" as the successor of the "Auburn-Lynn Shoe Company," unless in each instance it states clearly that it is not the manufacturer of the "Auburn-Lynn Shoes."

5.   That the defendant company, its officers, agents and servants, be and are hereby perpetually enjoined from the use of its corporate name or the conduct of its business so as to convey to the trade the impression that its manufactured product is the Auburn-Lynn Shoe product of the plaintiff, or that it is the successor of the plaintiff, or of the Auburn-Lynn Shoe Co., and from so conducting its business in this respect that persons of ordinary intelligence would be deceived thereby.

6.   That it be referred to John A. Morrill, Esq., of Auburn, a master in Chancery, to take an account of all the profits of the business of the defendant corporation, growing out of sales of shoes upon

which was impressed the trade-mark of the Auburn-Lynn Shoe Company, or any simulated trade-mark using the name "Auburn-Lynn," from the ninth day of July, A. D. 1903, to the date of this decree, and ascertain and report the amount of such profits, together with all damages sustained by the plaintiff during said period by the wrongful use of the plaintiff's trade-mark and trade-name, and by the unfair competition of the defendant corporation during said period."

The bill was dismissed without costs as to the defendants, Lunn and Reed.

It is the opinion of the court that these deductions and conclusions were clearly warranted by the findings of fact, and that the defendant's appeal must be dismissed.

It is contended in behalf of the defendant company that as the word "Auburn" in the plaintiff's trade-name indicated the place of manufacture, and the word "Lynn" signified the name of the manufacturer, the phrase "Auburn-Lynn Shoes" could not become the subject of an exclusive property right of the plaintiff, and was therefore incapable of being a valid trade-mark. But this contention cannot be sustained.

It may be difficult to reconcile the conclusions reached by different courts upon the facts reported in the multitude of decisions relating to this subject and impracticable to give an exact statement of what a trade-mark may consist under all circumstances, but an analysis of the leading cases shows that they are all in substantial accord upon the equitable principles and fundamental propositions respecting the nature and protection of trade-marks. "It is equitable," says Judge Putman in *The Le Page Co.* v. *Russia Cement Co.*, 51 Fed. Rep. 941, "that a manufacturer who has given reputation to any article should have the privilege of realizing the fruits of his labors by transmitting his business and establishment, with the reputation which has attached to them, on his decease to his legatees or executors, or during his lifetime to purchasers; and it is also in accordance with the principles of law and justice to the community that any trade-mark, including a surname, may be sold with the business or the establishment to which it is incident; because while it may be that individual efforts give them their value at the outside, yet afterwards this is ordinarily

made permanent as a part of the entire organization, or as appurtenant to the locality in which the business is established, and thenceforward, depends less on the individual efforts of the originator than on the combined result of all which he created." The general common law proposition upon which all the courts unite is that any words, letters, figures, marks or devices, or combination of any of these, affixed to a commercial article and used primarily to indicate the origin or ownership of it, either by its own meaning or by association with the article, and not employed merely as descriptive of such article to designate its quality or ingredient only, or solely as a geographical name without any secondary signification, must be recognized as a valid trade-mark. All the courts agree that one man shall not be permitted, by imitating such distinctive name or mark already employed by another to designate a commercial article, to impose upon the public an article of his own manufacture as the genuine article of another, for the obvious reason that it would in the first place be a fraud upon the manufacturer first appropriating such mark, and secondly, a fraud upon the consumers who have a right to be protected against such imposition. In *Symonds et al.* v. *Jones*, 82 Maine, 302, the court say: " The public come to associate their names, labels and marks with the products of some particular origin or ownership, or of some particular factory, farm, etc. It is clear that such names thus become convenient for the consumer and valuable to the producer and that both the consumer and the producer should be protected against their use by other parties upon other similar products. They become valuable according to the familiarity of the public with them, and the excellence of the product designated by them. The law justly recognizes such names, labels and marks as important attributes or appurtenances of a business, and as proper to be transferred with any sale or transfer of the business and its plant." See also *Canal Co.* v. *Clark*, 13 Wall. 311; *Brown Chem. Co.* v. *Meyer*, 139 U. S. 540; *Columbia Mill Co.* v. *Alcorn*, 150 U. S. 460. *Elgin Natl. Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665. In the last named case, Ch. J. Fuller says in the opinion: "The term has been in use from a very early date and generally speaking means a distinctive mark of authenticity through which the

*commodities* of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth and with equal right for the same purpose."

"And the general rule is thoroughly established that words that do not in and of themselves indicate anything in the nature of origin, manufacture or ownership, but are merely descriptive of the place where an article is manufactured or produced, cannot be monopolized as a trade-mark." But while it is undoubtedly the general rule that a geographical name when used alone and affixed to a manufactured article for the purpose of designating the place of its manufacture, or the address of the manufacturer, cannot be appropriated as a trade-mark, it has been held in numerous well considered cases that a geographical name which has long been used to indicate a particular manufactured article, may acquire a secondary meaning as the designation of a particular class of such articles, or the product of a particular manufacturer, and thus either become entitled to protection against infringement as a valid trade-mark, or serve as the basis of a proceeding to prevent unfair competition. In *American Waltham Watch Co.* v. *U. S. Watch Co.*, 173 Mass. 85, it was held that while the name "Waltham" on watches was originally used, in a geographical sense, by long use in connection with the plaintiff's watches, it had acquired a secondary meaning as a designation of the watches which the public had become accustomed to associate with the name. In *Montgomery* v. *Thompson*, 1891 App. Cases, 217, it was decided by the house of lords that the term "Stone Ale," which had been applied to a particular quality of beer manufactured by the defendants at the town of Stone, was entitled to the protection of the court and the plaintiff was enjoined from selling any ale, not manufactured by the plaintiff under the name of "Stone Ale." In *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508, it was held that the word "Glenfield" as applied to starch had acquired a secondary meaning

and indicated to the public the starch made by the appellants. It was therefore decided that the word "Glenfield" as a denomination of starch had become the property of the appellants. See also *Reddeway* v. *Banham*, App. cases, 1896, p. 199; *Carlsbad* v. *Kutnow*, 71 Fed. Rep. 167; *Viano* v. *Baccigalupo*, 183 Mass. 160; *Metcalfe* v. *Brand*, 86 Ky. 331. Paul on Trade-marks, section 59, and cases cited.

It is also conceded to be a general rule that a personal name alone cannot be appropriated as a technical trade-mark, although it may receive protection from the courts when it is so used by another as to render him answerable to the charge of unfair competition. Every person has a right to the honest use of his own name in his own business, but he will not be permitted by imitative and unfair devices to mislead the public in regard to the identity of the firm or corporation, or the goods manufactured by it. But a trade-mark that is originally personal, indicating that the article to which it is affixed is manufactured by a particular person, often comes by usage to indicate merely that the article was manufactured in the establishment with which he was formerly connected.

But it has been seen that there is a leading characteristic which distinguishes the trade-mark under consideration in the case at bar from the ordinary appropriation of a personal name or geographical term alone as a trade-mark. In the plaintiff's trade-mark, the geographical and personal names were both combined in an original device bearing the words "Auburn-Lynn Shoes, Auburn, Maine."

This arbitrary composite name of the plaintiff's product, with the location of the manufactory expressly added, undoubtedly constituted an impersonal trade-mark. It will be found to respond to all of the recognized tests of a valid trade-mark. It did not describe the stock and different materials which entered into the manufacture of the shoes to which it was affixed. It did not necessarily signify that the shoes were the product of Lynn's personal skill, but by long use of the trade-mark in connection with the shoes, it had come to indicate that they were the product of the manufactory with which he was connected, and thus through the reputation which they had acquired in the market, to operate as an assurance that they possessed certain

general qualities and merits. It did not describe the shoes, but it indicated their origin and ownership. It was a trade-mark which others could not use with equal right and equal truth for the same purpose. The plaintiff had acquired the exclusive right to the use of it, and the adoption by the defendant of the phrase "Auburn-Lynn Shoe Co." as a trade-mark, and corporate name was an unauthorized simulation of the plaintiff's trade-mark and constituted an infringement of the plaintiff's property right without other proof of a fraudulent intent on the part of the defendant. *Elgin Natl. Watch Co.* v. *Ill. Watch Co.*, 179 U. S. 674; Paul on Trade-marks, sections 183-185. The prompt abandonment of the defendant's trade-mark with the change of its corporate name to "Lunn & Lynn Shoe Co." after the commencement of this bill, was a practical admission of this infringement. It is not indispensable that the words and devices of the two trade-marks should be in fact identical in order to constitute an infringement. In contemplation of law two trade-marks are substantially the same if the resemblance between them is so close that it deceives a customer exercising ordinary caution in his dealing and induces him to purchase the goods of one manufacturer for those of another. *McLean* v. *Fleming*, 96 U. S. 256; *Amoskeag Mfg. Co.* v. *Trainer*, 101 U. S. 63. A critical comparison of two trade-marks placed side by side might disclose differences in both words and devices, but if the similarity is of such a character as to convey a false impression to the minds of ordinarily careful purchasers, respecting the identity of the manufactory or of the goods, it is sufficient to afford ground for redress.

Again it has been seen that the defendant corporation unnecessarily and without authority adopted the words of the plaintiff's trade-mark comprising the name of Lynn, for its corporate name. In *William Rogers Mfg. Co.* v. *R. W. Rogers Co.*, 66 Fed Rep. p. 56, the court say: "Although the case of a personal name as a trade-mark will not be protected against its use in good faith by a defendant who has the same name, the reason of the rule ceases and the rule no longer applies when the defendant, as in case of a corporation, selects its own name, especially where it appears that such name is selected with an intention to mislead." In *Holmes B. & H.* v. *The Holmes B. & A. Mfg.*

*Co.*, 37 Conn. 278, it was held that where a corporation has, with their consent, embodied the names of its principal stockholders in the corporate name, the right to use the name so adopted will continue during the existence of the corporation, and that the use of these names by a rival company subsequently formed and embracing such stockholders, in such a manner as to mislead customers into the belief that the two companies were the same, was in violation of the plaintiff's right and should be enjoined. See also *Royal* v. *Royal,* 122 Fed. Rep. 337; *Bissell* v. *Bissell,* 121 Fed. Rep. 355.

In the light of both principle and authority it thus appears that the defendant's aggressions upon the rights of the plaintiff prior to the change of its name to "Lunn and Lynn Shoe Co." constituted not only a violation of the general law covering unfair competition, but a specific and positive infringement of the plaintiff's exclusive right to the use of a technical trade-mark and trade-name. The law of trade-marks, it is true, is but a special feature of the general law of unfair competition in trade which rests upon the elementary principle that no person has the right to sell his goods for those of another. But as already indicated there are important distinctions to be observed between them. In the first place unfair competition, unlike the infringement of technical trade-marks, does not necessarily involve the violation of any exclusive rights in the plaintiff to the use of the names or symbols employed by the defendant. There may be unfair competiton resulting from an unauthorized and improper use of such names and symbols, although the plaintiff has no property right in them as a trade-mark. Any conduct designed and having a natural tendency to deceive the public and enable one man to dispose of his goods for those of another may be unfair competition and be enjoined, although it is not expressly shown that any particular person was thereby actually deceived. *McLean* v. *Fleming,* 96 U. S. 245; *Samuels* v. *Spitzer,* 177 Mass. 226.

Again it is frequently stated that in cases of technical trade-mark, the fraudulent intent to deceive is presumed, while in cases of unfair competition, the plaintiff must prove this intent or show facts and circumstances from which it may be reasonably inferred. But upon this question of intent there is a great diversity of opinion, or of

expression, in different courts, and it has been held in some cases that there is no practical distinction in this respect between cases of trade-mark infringement and unfair competition, since the reasons often given for not requiring proof of fraudulent intent in cases of technical trade-mark are equally applicable to cases of unfair competition. 28 Am. Eng. Enc. of Law, 419, and cases cited. The rule adopted in the U. S. Supreme Court is thus stated by Ch. Justice Fuller in *Elgin Natl. Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 674. "If a plaintiff has the absolute right to the use of a particular word or words as a trade-mark, then if an infringement is shown, the wrongful or fraudulent intent is presumed, and although allowed to be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained. But where an alleged trade-mark is not in itself a good trade-mark, yet the use of the word has come to denote the particular manufacturer or vendor, relief against unfair competition or perfidious dealing will be awarded by requiring the use of the word by another to be confined to its primary sense by such limitations as will prevent misapprehension on the question of origin. In the latter class of cases such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of. . *Lawrence Manufacturing Company* v. *Tennessee Manufacturing Co.*, 138 U. S. 537, 549; *Coats* v. *Merrick Thread Co.*, 149 U. S. 562; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169."

It has accordingly been held that a court of equity will enjoin the infringement of a technical trade-mark which has been occasioned by accident or mistake without proof of actual fraud on the part of the defendant, but it will not enjoin the imitations of labels, bill heads and commercial names of a rival trader, unless it satisfactorily appears that such imitations are fraudulently designed and have a tendency to occasion damage. *McLean* v. *Fleming*, 96 U. S. 245.

In the case at bar after the plaintiff's bill was commenced, the defendant corporation changed its name to "Lunn and Lynn Shoe Co." but continued to use the old stationery and copies of the printed trade-mark, substituting "Lunn" for Auburn in red ink, the word Auburn being erased but not obliterated. It has been seen that the

presiding Judge found and held that the "conduct of the defendant company, in adopting the phrase "Auburn-Lynn Shoe Company" as its trade-mark, and in conducting a shoe business under that corporate name, manufacturing goods similar in style and character to those manufactured by the plaintiff, and so nearly so as not to be distinguishable by ordinary observers, advertising and selling those goods in the territory covered by Lunn and Reed, when they were acting for the plaintiff company, in the sale of Auburn-Lynn Shoes, constituted unfair competition. . . . . Those who had been in the habit of dealing in and purchasing the Auburn-Lynn Shoes might well understand that the product of the Auburn-Lynn Shoe Co. represented the plaintiff's manufacture. And even after the change of name to the Lunn and Lynn Shoe Co., the use of the old literature, so changed as only to indicate that the Lunn and Lynn Shoe Co. was the successor of the Auburn-Lynn Shoe Co. did not help the matter. If customers could be led to believe that the Auburn-Lynn Shoe Co. was the manufacturer of shoes which they had formerly bought as "Auburn-Lynn Shoes" they would not be undeceived by seeing literature in which "Auburn" was changed to "Lunn and" in such a way as to give the impression that the Lunn & Lynn Shoe Co. was a successor of the Auburn-Lynn Shoe Co.

It has been seen that in the light of the decisions the unauthorized simulation of the plaintiff's trade-mark and trade-name by the defendant corporation, constituted an infringement of the plaintiff's exclusive right to the use of a technical trade-mark, without other proof of a fraudulent intent on the part of the defendants; but the decision of the presiding Judge that such conduct on the part of the defendant corporation, prior to the change of its name to Lunn & Lynn Shoe Co., constituted unfair competition involved a finding that there was in fact a fraudulent intent on its part to convey to the trade an impression that its shoes were the Auburn-Lynn shoe product of the plaintiff. This finding was not required to authorize the injunction against the use of the plaintiff's trade-mark by the defendant corporation, but it was nevertheless relevant and material upon the question of damages; since the presumption of wrongful intent in cases of technical trade-mark may be rebutted upon the question of

liability for profits and damages. *Elgin Natl. Watch Co.* v. *Ill. Watch Co.*, 179 U. S. 674.

But the presiding Judge further found that even after the change of name to Lunn and Lynn Shoe Co., the use of the old advertising literature, with changes only indicating that the Lunn and Lynn Shoe Co. was the successor of the Auburn-Lynn Shoe Co., "did not help the matter," for the reason that customers would continue to receive the false impression that the shoes placed on the market by the Lunn & Lynn Shoe Co., were the Auburn-Lynn Shoes of the plaintiff. This was in effect a finding that the conduct of the Lunn & Lynn Co. in using the old literature, unaccompanied by any explicit statement that this company was not the manufacturer of Auburn-Lynn Shoes, still constituted unfair competition.

These findings and conclusions of the presiding Judge were justified by the facts reported. The entire history of the conduct of the shoe business by the defendant corporation after the retirement of W. R. Lynn from the plaintiff company, discloses a manifest intention and persistent effort on the part of the management to beguile the old customers of the plaintiff company into purchasing the defendant's shoes under the impression that they were the Auburn-Lynn product manufactured by the plaintiff and thereby to appropriate the value of the reputation which the latter had acquired. It shows a determination to continue such efforts until compelled by the courts to forbear. Its change of name to Lunn and Lynn Shoe Co. considered in the light of its subsequent conduct in the use of the old trade literature, indicated an ingenious attempt to disguise the true nature of its methods and conduct, rather than a genuine purpose to desist from the pursuit of its course of unfair competition. All of the provisions of the decree signed by the presiding Judge are therefore affirmed without modification except the sixth paragraph in regard to the extent of the accounting to which the plaintiff is entitled. This question is raised by the plaintiff's exceptions.

It has been seen that by the sixth paragraph of the decree the cause was referred to a master to take an account of all the profits of the business of the defendant corporation, "growing out of sales of shoes, upon which was impressed the trade-mark of the Auburn-Lynn

Shoe Co., or any simulated trade-mark using the name Auburn-Lynn" from the time of the organization of the defendant corporation to the date of the decree, with all damages sustained by the plaintiff during that period by the wrongful use of the plaintiff's trade-mark and trade-name, and by the unfair competition of the defendant corporation during that period.

The words in quotation marks were introduced by the presiding Judge in the decree filed by the plaintiff's attorney, and to this limitation upon his right to an accounting for the profits of the defendant's business, the plaintiff took exceptions.

The rule which now prevails in the equity courts respecting the wrongdoer's accountability for the "profits and damages" resulting from his unlawful acts, requires the master not only to take an account of all profits made by the defendant, but also to make an inquiry in regard to all damages sustained by the plaintiff on account of the defendant's wrongful acts, and since it cannot be ascertained with any reasonable certainty how much of the profit is due to the trade-mark and how much to the intrinsic value of the commodity, the whole will be awarded to the plaintiff.   It is equally well settled that the profits recoverable in equity for unfair competition are governed by the same rule as in cases of infringement of trade-marks, and are not limited to such as accrue from sales in which it is shown that the customer is actually deceived, but include all made on the goods sold in the simulated dress or package, and in violation of the rights of the original proprietor.   *Fairbank Co.* v. *Windsor,* 118 Fed. Rep. 96; *Benkert* v. *Feder,* 39 Fed. Rep. 534; *Williams* v. *Mitchell,* 106 Fed. Rep. 168; *Sawyer* v. *Kellogg,* 9 Fed. Rep. 601; *Saxlehner* v. *Eisner & Mendelson Co.,* 179 U. S. 19; *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169; *Graham* v. *Plate,* 40 Cal. 593; *Avery* v. *Meikle,* 85 Ky. 435; *McLean* v. *Fleming,* 96 U. S. p. 437.

In *Singer Mfg. Co.* v. *June Mfg. Co.,* supra, it was held that on the expiration of the plaintiff's patent, the right to make the patented article and to use the generic name "Singer" passed to the public, but that the defendant was guilty of unfair competition in failing to indicate that the machines made by him were not the product of the Singer Manufacturing Company, and the defendant corporation was

accordingly directed to "account" for any profits which may have been realized by it, because of the wrongful acts committed by it while engaged in such unfair competition, although there had been no infringement of a technical trade-mark.

In the case at bar it appears that between August 4, 1903, and the time of the hearing of the bill in March, 1904, thirty-two letters intended for the plaintiff but addressed to the Auburn-Lynn Shoe Co., came into the hands of the defendant corporation. They contained orders, checks, and general correspondence, some in the defendant's printed addressed envelopes and some in writing. They were mostly from old customers, and from these letters, the defendant company obtained information concerning the plaintiff's business. It expressly appears that after the defendant's change of name, one order was taken by the defendant's salesman on the order blanks of the Auburn-Lynn Shoe Co.

It is accordingly the opinion of the court that the plaintiff is entitled to an accounting not only for the profits realized by the defendant company, from sales of shoes upon which was impressed the trade-mark of the Auburn-Lynn Shoe Company, or any simulated trade-mark using the name "Auburn-Lynn," but also for the profits resulting from the wrongful acts committed by the defendant company in its unfair competition with the plaintiff between the time of its change of name to Lunn and Lynn Shoe Co., and the date of the decree.

> *Defendant's appeal dismissed.   Plaintiff's exceptions*
> *sustained.   Cause remanded for a modification*
> *of the decree in accordance with this opinion.*