HOWARD DUSTLESS DUSTER CO. v. CARLETON et al.

(District Court, D. Connecticut.    October 6, 1916.)

No. 1342.

1. TRADE-MARKS AND TRADE-NAMES ⬯98—UNFAIR COMPETITION—RECOVERY OF PROFITS—SHOWING OF LOST SALES.

A showing of lost profits in a trade-mark or unfair competition case is not the foundation of plaintiff's right of recovery, and in an unfair competition case plaintiff was entitled to recover profits though it did not show any lost sales.

2. TRADE-MARKS AND TRADE-NAMES ⬯93(1)—UNLAWFUL COMPETITION—PRESUMPTION.

There was a prima facie presumption that the sales of all dust cloths by defendants bearing wrapper, packing, etc., infringing on the wrapping and packing of plaintiff's goods, and so constituting unfair competition, were due to the wrapping, packing, etc., and any contrary evidence should have been produced by defendants.

3. TRADE-MARKS AND TRADE-NAMES ⬯98—UNLAWFUL COMPETITION—DISALLOWANCE OF COST ITEMS TO DEFENDANT.

In a suit for unlawful competition by selling dustless dusters in wrapper, packing, etc., resembling those on plaintiff's, the master properly disallowed all cost items of the defendant which manufactured the infringing goods, such defendant stating in its affidavit that it was unable to state the exact profits on any one branch of goods manufactured, since damages in unfair competition suits include all sales made of the goods sold in the simulated trade-mark or package in violation of the original proprietor's rights, so that the question as to the exact profits of any one branch of the goods manufactured is immaterial, especially where it could not be ascertained with any reasonable certainty how much was due to the trade-mark and how much to the intrinsic value of the commodity.

4. TRADE-MARKS AND TRADE-NAMES ⬯98—UNFAIR COMPETITION—PRIMA FACIE ACCOUNT.

In a suit for unfair competition by selling dustless dusters packed so as to simulate plaintiff's, defendant's account and affidavit, presented before the master under Court Rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii), showing first, the amount of sales, second, that some profits were made and third, that defendant's treasurer could not more than estimate the amount, made a prima facie account for plaintiff, casting the burden of proof on defendant.

In Equity.    Suit by the Howard Dustless Duster Company against L. Clinton Carleton and the Tate Manufacturing Company.    On defendants' exceptions to the report of the master.    Order directed overruling the exceptions and confirming the report.

See, also, 219 Fed. 913.

Oliver Mitchell, of Boston, Mass., for plaintiff.
Willard B. Luther, of Boston, Mass., for defendants.

THOMAS, District Judge.    This case is now before the court on defendants' exceptions to the report of the master, to whom it was referred after the entry of the interlocutory judgment awarding the plaintiff an injunction.    The injunction was granted on the theory that although the defendant the Tate Manufacturing Company had the full

right to manufacture and sell its black dust cloth so long as it. did not furnish it in a package resembling that of the plaintiff, yet—

"if the Tate Manufacturing Company has made and sold its dust cloths to Carleton, which the latter sold, so that they may or have been actually used. by Carleton so as to mislead the public, it became a joint tort-feasor with Carleton and is guilty of contributory infringement of plaintiff's rights, * * * the means of deceiving purchasers giving a right of action."

The defendants thereupon presented before the master their account in the form of debit and credit, following the practice as directed in Equity Rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii), and no examination was had vive voce or upon interrogatories, and no evidence was offered by the plaintiff.

The master thereupon filed his report, finding profits due from the Tate Manufacturing Company in the sum of $434.63, and from Carleton in the sum of $90. The Tate Manufacturing Company has alone excepted to this report, filing two exceptions which raise substantially the following points: First, that the plaintiff, not having shown that it has lost any sales it otherwise would have made but for the acts of this defendant, is entitled to a merely nominal award for damages, and is not entitled to recover any profits whatever; and, second, that the master erred in finding on the uncontroverted affidavit of the Tate Manufacturing Company, the same being incorporated in his report, that its affidavit of cost in connection with the manufacture of dust cloths was too indefinite and uncertain to be allowed as to any of its items, whereas most of these are entirely definite and all are uncontradicted.

[1] 1. The defendant bases its argument upon the erroneous assumption that the showing of lost profits in a trade-mark or unfair competition case is the foundation of the plaintiff's right of recovery. In Benkert v. Feder (C. C.) 34 Fed. 534, Judge Sawyer held that there was no just analogy between the infringement of a patent for a machine and a trade-mark (and trade-mark infringement is but a specific form of unfair competition), and that the owner of a trade-mark is entitled to recover of an infringer, the profits arising from the sale of the spurious goods with the trade-mark impressed upon them, and is not limited to the difference between the price for which the spurious goods would sell with, and the price of the same goods without the trade-mark impressed upon them. In the course of his opinion (34 Fed. at page 535), the learned judge said:

"To adopt as the measure of compensation for such injuries the difference between the price for which the spurious goods would sell without the trade-mark and for which they will sell with it imprinted thereon would be a mockery of justice. In my judgment the infringer should at least account for the entire profits made upon the goods wrongfully sold with the trade-mark impressed thereon. And this is the rule established, after mature consideration, in Graham v. Plate, 40 Cal. 598 [6 Am. Rep. 639], and Sawyer v. Kellogg (C. C.) 9 Fed. 601. There may also be damages beyond the mere profits resulting to the owner of the trade-mark infringed, which he may recover. See, also Cod. Trade-Marks, pars. 237, 246. I do not think there is any just analogy with respect to profits and damages between the infringement of a trade-mark and a patent for an improvement in a machine. A machine may embrace inventions for half a dozen improvements, for each of which there is a patent held by different individuals. One machine might infringe them all. In such case, each would be entitled to recover the profits attributable to his own inven-

tion, and not the profits made upon the machine as an entirety. There is no analogy to such a case on the infringement of a trade-mark. The infringer fraudulently attaching another man's property to his own occasions only a confusion of property with a view of taking advantage of that other's property. The trade-mark sells the whole article, however inferior or injurious in that particular, and prevents the sale of the owner's goods of equal amount. At least that is the fraudulent purpose, and the natural tendency, whether always accomplished or not; and the injured party should have at least the whole profit resulting from the wrongful act, and such I understand and hold the rule to be. The damage may be much more arising from destroying the reputation of the owner's goods."

This opinion was subsequently affirmed by the Circuit Court of Appeals for the Ninth Circuit in 70 Fed. 613.

To the same effect is the decision of the Supreme Judicial Court of Massachusetts in Reading Stove Works v. Howes, 201 Mass. 437, 87 N. E. 751, 21 L. R. A. (N. S.) 979, where it is held that a manufacturer of detachable parts of stoves, who wrongfully sells such parts as the product of another manufacturer by making them with the trademark and trade-name of such other manufacturer, is liable in a suit in equity to account for the entire profits, if any, which he has derived from the sale of parts bearing the infringing marks. Another case directly in point is W. R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co., 100 Me. 461, 62 Atl. 499, 4 L. R. A. (N. S.) 960, where it is held, as well settled, that the profits recoverable in equity for unfair competition are governed by the same rule as the cases of trade-marks, and that:

"The rule which now prevails in the equity courts, respecting the wrongdoer's accountability for the 'profits and damages' resulting from his unlawful acts, requires the master not only to take an account of all profits made by the defendant, but also to make an inquiry in regard to all damages sustained by the plaintiff on account of the defendant's wrongful acts, and since it cannot be ascertained with any reasonable certainty how much of the profit is due to the trade-mark and how much to the intrinsic value of the commodity, the whole will be awarded to the plaintiff. It is equally well settled that the profits recoverable in equity for unfair competition are governed by the same rule as in cases of infringement of trade-marks, and are not limited to such as accrue from sales in which it is shown that the customer is actually deceived, but include all made on the goods sold in the simulated dress or package, and in violation of the rights of the original proprietor. Fairbank Co. v. Windsor [C. C.] 118 Fed. 96; Benkert v. Feder [C. C.] 34 Fed. 534; Williams v. Mitchell, 106 Fed. 168 [45 C. C. A. 265]; Sawyer v. Kellogg [C. C.] 9 Fed. 601; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19 [21 Sup. Ct. 7, 45 L. Ed. 60]; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169 [16 Sup. Ct. 1002, 41 L. Ed. 118]; Graham v. Plate, 40 Cal. 593 [6 Am. Rep. 639]; Avery v. Meikle, 85 Ky. 435 [3 S. W. 609, 7 Am. St. Rep. 604]; McLean v. Fleming, 96 U. S. 437 [(245) 24 L. Ed. 828]."

Other decisions bearing out this proposition are Regis v. Jaynes, 191 Mass. 245, 249, 77 N. E. 774; Lever v. Goodwin, 36 Ch. Div. 1; Hamilton Shoe Co. v. Wolf Bros., 240 U. S. 251, 261, 36 Sup. Ct. 269, 60 L. Ed. 629.

Under this rule it seems clear that there was no error on the part of the master in refusing to rule that the plaintiff, not having shown that it would have sold to any of the parties to whom Carleton sold, is not entitled to recover any profits whatsoever.

[2] Moreover, there was the prima facie presumption that the sales

of all dust cloths bearing the infringing wrapper, packing, etc., were due to the wrapping, packing, etc., and any evidence to the contrary, if such there was, should have been produced by the defendants, for they are the only persons who know the facts, or could make the proof.

[3] 2. In my opinion the master did not err in disallowing all cost items of the Tate Manufacturing Company. In its affidavit it stated that it was unable to state the exact profits on any one branch of goods manufactured, and the master's conclusion was that this statement was "so indefinite and uncertain * * * as to render it utterly impossible to determine with any approach to accuracy any approximation of the profits." As was said by Judge Sawyer in Benkert v. Feder, supra:

"The trade-mark sells the whole article, however inferior or injurious in that particular, and prevents the sale of the owner's goods of equal amount," and "the injured party should have at least the whole profit resulting from the wrongful act."

The vice of the defendant's argument is that it erroneously assumes that the profits recoverable in equity for unfair competition do not include all sales, and are limited to such as accrue from sales in which it is shown that the customer is actually deceived. The authorities cited show that this is not the law, but that the damages do include all sales made of the goods sold in the simulated trade-mark or package, and in violation of the rights of the original proprietor. If that is so, the question as to the exact profits on any one branch of goods manufactured is immaterial. Especially is this the case here, where it cannot be ascertained, with any reasonable certainty, how much of the profit is due to the trade-mark and how much to the intrinsic value of the commodity.

[4] The real fact is that the facts admitted by the defendant in its account and affidavit made a prima facie account for the plaintiff, viz.: (a) The amount of sales; (b) that some profits were made; and (c) the defendant's treasurer was unable, from the books or otherwise, to more than estimate the amount of profits, and the defendant has not discharged itself of the burden of proof cast upon it.

Let an order be entered overruling the exceptions and confirming the report of the master.