## NOEL v. ELLIS.

(Circuit Court, S. D. Iowa. January 6, 1896.)

1. TRADE-MARKS AND TRADE-NAMES—VALIDITY—INFRINGEMENT.
   Trade-mark "Vitae-Ore," and its abbreviation, "V-O," as applied to a medicinal preparation, held valid, and infringed by the words "Vitalizing Ore," also applied to a medicinal preparation.[1]

2. SAME—USE OF DESCRIPTIVE TERM BY DEFENDANT.
   Use by a defendant of a name for his article may be enjoined, when resembling complainant's trade-mark, although defendant's name or mark may be descriptive of such article.[1]

3. SAME—UNFAIR COMPETITION—FORMER AGENCY OF DEFENDANT.
   Use of similar marks, wrappers, and printed matter, and general dress and appearance, is evidence of unfair competition, especially where defendant has the vantage ground of being a former agent for complainant, and where he uses the genuine circulars to advance the sale of the spurious article.[1]

---

[1] As to unfair competition in trade generally, see note to Scheuer v. Muller, 20 C. C. A. 165, and supplementary note to Lare v. Harper, 30 C. C. A. 376.

4. SAME—INJUNCTION.

Injunction granted for infringement of trade-mark "Vitae-Ore," and its abbreviation, "V-O," and for unfair competition in business.

The bill alleged that in 1892 the defendant, Ellis, was a general agent for complainant, Noel, for the sale of a medicinal preparation in the form of a powder, put up in envelopes, and extensively advertised and known to the public by the name of "Vitae-Ore," or the initial letters "V-O." In 1895, while agent, Ellis began to advertise and sell a preparation of his own, similarly dressed, and called "Vitalizing Ore," or "Vitalizing T Ore." Ellis sold his preparation generally, but more particularly to local agents, and offered them inducements to buy of him. Ellis also substituted his preparation for Noel's on orders received by Ellis from local agents for "Vitae-Ore" or "V-O." The shape and size of Noel's envelopes or packages, and the printing thereon, were simulated by Ellis. Complainant charged defendant with infringement, and with unfair competition in business, by reason of such similitude and the substitution of the spurious for the genuine article. On motion by complainant for a preliminary injunction, Ellis alleged breach by Noel of his contract of agency as a justification of his conduct, and also urged that as his preparation was a product of nature, and vitalizing in character, he had the right to designate it by such descriptive name, regardless of its resemblance to Noel's trade-marks in sound and appearance.

Samuel E. Hibben and Charles L. Wise, for complainant.
G. W. Paine and C. C. Cole, for defendant.

WOOLSON, District Judge (orally). The matters of contract alleged by defendant as justification are not relevant to the case in issue, but would be the subject of an action for damages. In the case now before the court, the question is, has the defendant imitated and copied the signs, phrases, and trade-marks of the complainant's goods, and has he attempted to put the imitation upon the market, using fraudulent means, to complainant's injury? In the case of Pillsbury v. Pillsbury, 12 C. C. A. 432, 64 Fed. 841, the question was whether a man had a valid trade-mark in his own name to the exclusion of any other man having the same name. The court there held that, if a man should adopt his name as a trade-mark, he could not prevent another man of the same name from using his name, and applying it to goods he might place on the market, provided that no means of unfair competition were resorted to. Now, in that case the complainant showed that they manufactured a grade of flour to which they had applied the term "Best," and further used the name "Pillsbury," and the mark "XXXX," inclosing it in a wreath. The evidence showed that the defendant had not only used the name "Pillsbury," but had also used the other words adopted as a trademark by the complainant, and that the imitation was such as would tend to mislead intending purchasers. Unfair means of competition having been resorted to, the court granted the injunction. Can descriptive words be the subject of a valid trade-mark? According

to the doctrine of trade-mark law, they cannot be. At the same time the courts have decided that the originator is entitled to certain proprietary rights in a name which he has used to designate a certain article, and for which he has built up a reputation and a business, and which he has given the public to understand is an article prepared by him, so that certain words which certainly contain elements of description have been declared by the courts to be valid trade-marks. Such is the case on "Cottolene." In the case referred to by Mr. Hibben (American Grocery Co. v. Sloan, 68 Fed. 539), the word "Momaja" was a word made up from the first two letters of the words "Mocha," "Maracaibo," and "Java" coffees, and was applied to a certain brand of coffee which was a mixture of these three. Most certainly this word was, in a sense, descriptive; but the courts decided that it was a valid trade-mark, and that the word "Mojava" was an infringement of it, so that, even though the word "Momaja" contained the suggestion of the contents of the package, still this suggestion was not sufficient to class it among those terms of a purely descriptive nature.

Coming to the case before the court, the question is, has the complainant a valid trade-mark in the words "Vitae-Ore"? If he had used the words "Ore of Life," and applied them to his product, they perhaps might not have been a valid trade-mark, inasmuch as it might be a generic term, and descriptive. But he does not do so, and instead uses the word "Vitae," which, even though it is the Latin of "Life," is still a fanciful word; and he couples the word "Vitae" with the word "Ore," and calls it "Vitae-Ore," bringing in another word which had not been heretofore connected with the word "Ore," or applied to a medicine or a preparation of a medicinal nature, so far as the court is advised or has been able to discover; so that the complainant has proprietary rights in the name, inasmuch as he has been the first person to thus apply the words "Vitae-Ore" to a medicine. Whether or not the product of the complainant is really an ore has not been contended by either party, so that the court assumes that it is an ore. If, however, the complainant should prove that it is not an ore, the case might be stronger; but for the present time, assuming that it is an ore, the question is, are the words "Vitae-Ore" descriptive? The court is unable to discover anything that these words could describe, and thinks that it is a purely fanciful name, and was arbitrarily selected by the complainant to designate his goods. Therefore it is the opinion of this court that the complainant may have a good and valid trade-mark in the words "Vitae-Ore". The question is, has the defendant infringed on the trade-mark of the complainant? If he had called the preparation "Vital Ore," there would be no question about it being an infringement, because there would be simply the change of one letter. Now, how much further can this doctrine be carried, and does the adding of the letters "i-z-i-n-g" to the word "Vital" remove it from the charge of infringement? In the words "Vitalizing Ore" the same general suggestion is contained, and in either case the suggestion would be the same, because the English words "Vital" and "Vitalizing" mean practically the same, and the addition of the last letters would not ma-

terially change the meaning.    There can be no question but that the word "Vital" would be an infringement of "Vitae"; and it is the opinion of the court that the word "Vitalizing" is so similar in sound, if not in appearance, as to be calculated to mislead and de- ceive the public and intending purchasers.    In a trade-mark case coming before me last December, the plaintiff had taken the name of "White Rose Flour," and the defendant introduced evidence showing that the words "White Rose" were used by a number of mills to represent a certain quality of flour; but in that case the ques- tion was whether or not the words "White Rose" could be a valid trade-mark, and, from the evidence produced, the court decided that they might, as applied to flour.    There is no ·question that mere locality cannot be the subject of trade-mark, as in the case of Lacka- wanna, Columbia, and other cases cited.    These are the names of locality.    If the complainant had called his preparation "Chicago Ore," there would be no trade-mark, but I cannot see why the words "Vitae Ore" cannot be the subject of a valid trade-mark.

But, leaving this subject, the proof introduced in this case shows the putting out by defendant of a product he called "Vitalizing Ore," as being equivalent to "Vitae Ore," and in some cases as being "Vitae Ore."    The relation existing in the past between him and the com- plainant gives him a vantage ground from which to press the sale of his preparation as an article which would be so similar as to mislead the public into the belief that it was the product of the plaintiff,—in one case sending out the original circulars with the imitation.    This, without doubt, was intended to cause a deception, and it looks to be a very strong case of unfair competition. · The words "Vitalizing Ore" are so similar as to tend to deceive the purchasers.    The pack- ages, while being of the same general shape, size, and color, are somewhat dissimilar in appearance; yet there are many phases of the same general idea, and the goods of the defendant are put up in the same dress, and the wrapper contains substantially the same phrase- ology, as that of the complainant.    There can be no protection in stamping the name of the manufacturer in red ink, as that would not in that respect tend to confuse or deceive, but the public may be misled by the similarity of dress and of phrases.    It seems to this court that the evidence is in one direction, and the court cannot see how he can refuse the application of the complainant for a prelimin- ary injunction, and I think the defendant should be restrained pending the case.

NOTE. On March 24, 1898, at Council Bluffs, defendant's motion to dis- solve the injunction was denied; and afterwards defendant's cross bill, alleging breach of contract of agency, was ordered stricken from the files, as concerning matters foreign to the issue. Proofs for final hearing were afterwards taken, and the case referred to a master to report the facts and conclusions of law. The master reported in favor of complainant; holding defendant guilty of infringement, and of unfair competition in business. The master's report was confirmed by the court, and a decree (Shiras, J.) ordered finding complainant's trade-marks, "Vitae-Ore" and "V-O," to be valid and infringed, and also finding defendant guilty of unfair competition.