STANDARD VARNISH WORKS v. FISHER, THORSEN & CO.

(Circuit Court, D. Oregon. May 13, 1907.)

No. 2,977.

TRADE-MARKS AND TRADE-NAMES—SUIT FOR UNFAIR COMPETITION—SUFFICIENCY OF BILL.

While the term "Turpentine Shellac," as applied to a wood filler or coating which consists principally of a mixture of turpentine and shellac, because of its descriptive character, cannot be appropriated as a technical trade-mark by one manufacturer, a bill by such manufacturer states a case for equitable relief on the ground of unfair competition, where it alleges that by reason of the long and extensive use of such term by complainant to designate its product it has acquired a secondary meaning and become associated in the mind of the public with its said product exclusively, and that defendant is using such term in connection with an inferior article of its own manufacture for the purpose of palming the same off on customers as the goods of complainant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 78, 79, 86, 102.]

In Equity.    On demurrer to bill.

The complainant has heretofore and for a long time been engaged in the manufacture of a preparation designed and used as a first or priming coat upon inside wood finish, commonly known as a first coater or wood filler. As a designation for the distinctive characterization of such product manufactured by complainant, it devised and appropriated the words "Turpentine Shellac," and employed and used them as a trade-mark, by printing them upon labels which were pasted upon all packages or cans containing the product. This adopted trade-mark was, in 1898, registered with the National Paint, Oil &

Varnish Association, and advertised in the Paint, Oil & Drug Review, of Chicago, Ill., with a view to giving the same publicity and advertising the preparation in the market; and later, in 1902, such trade-name was registered and recorded in the Patent Office of the United States. So the preparation, as the bill of complaint shows, has been by means of such trade-name widely and extensively and for a long time advertised and sold in the markets, both in the United States and in Canada; and by reason of the long use of such trade-name in that connection, and by association always with the name of the complainant, it has acquired a secondary meaning, aside from its primary signification, which has now become peculiar to the preparation of the complainant's manufacture only. With this as a premise, it is further alleged that the defendants, with a view to availing themselves of the good reputation of complainant's preparation in the market, have wrongfully appropriated and are making use of complainant's trade-name for advertising their own product, which is of greatly inferior quality and adaptability to that of complainant, and for foisting their own preparation upon the custom as and for that of the complainant; and thus that they are injuring the complainant in its business by unfair competition, and imposing upon and defrauding the public. The purpose of the suit is to have defendants restrained from using complainant's trade-name, and from further engaging in unfair competition with complainant, as it respects the marketing and sale of its preparation and product. The sufficiency of the bill of complaint is challenged by demurrer.

E. B. Seabrook and Beach & Simon, for complainant.
Dolph, Mallory, Simon & Gearin, for defendants.

WOLVERTON, District Judge (after stating the facts). The first point presented in support of the demurrer is that the term or designation "Turpentine Shellac" is not such a one as is capable of being appropriated and employed as a trade-mark; and, the second, that the bill of complaint does not state facts sufficient to show that the defendants are engaging in unfair competition in business as it relates to the complainant and the preparation in question.

Without discussing the subject of difference in detail, a few general observations will indicate the rules of law applicable. Not all words and devices are capable of being appropriated as trade-marks. Especially is this true of words which indicate a generic name, or which are merely descriptive of an article of trade—of its qualities, ingredients, or characteristics—and before they can be so appropriated they must, either of themselves or by association, point distinctively to the origin or ownership of the article to which they are applied. As is said by Mr. Justice Strong, in the case of Canal Company v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581:

"The trade-mark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association."

Mr. Justice Brown announces the same principle in the case of Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247:

"Words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark."

So, again, in the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 273, 45 L. Ed. 365, Mr. Chief Justice Fuller says:

153 F.—59

"And the general rule is thoroughly established that words that do not in and of themselves indicate anything in the nature of origin, manufacture, or ownership, but are merely descriptive of the place where an article is manufactured or produced, cannot be monopolized as a trade-mark."

Two words, each denoting a simple product within itself, are here employed in conjunction, and it is sought to appropriate the designation as a trade-mark to the exclusive use of the complainant in the advertisement and sale of its preparation in the markets. The preparation in question is very naturally called "Turpentine Shellac," as it consists principally of a mixing or combination of the two more simple ingredients, turpentine and shellac, and, of course, in its ordinary signification the name is merely descriptive of the compound. It can scarcely indicate origin or proprietorship, so that it is not a term or designation suitable for appropriation as a trade-mark in the technical sense. As a trade-name, it may be properly so employed, but within itself it is inapt for exclusive appropriation as a trademark. Beyond this, however, words or symbols naturally descriptive of the product, while not adapted for exclusive use as a trade-mark, may yet acquire, by long and general usage in connection with the preparation and by association with the name of the manufacturer, a secondary meaning or signification, such as will express or betoken the goods of that manufacturer only, and in this sense he will be entitled to protection from an unfair use of the designation or trade-name by others that may result in his injury and in fraud of the public.

The principle that one person or firm should not sell his goods as the goods of another person or firm lies at the bottom of the legal objection, and it is the making use of the trade-name, which by a peculiar and particular signification betokens the goods of a particular manufacturer, for the purpose of foisting the goods of another, especially if they be of inferior stamp or quality, upon the market as the goods of that manufacturer, that the law will not tolerate. Such a practice is unfair and injurious both to the proprietor or manufacturer and to the public. The doctrine is nowhere better stated than in two cases to which I will now allude. In Noel v. Ellis (C. C.) 89 Fed. 978, the court says:·

"Can descriptive words be the subject of a valid trade-mark? According to the doctrine of trade-mark law, they cannot be. At the same time the courts have decided that the originator is entitled to certain proprietary rights in a name which he has used to designate a certain article, and for which he has built up a reputation and a business, and which he has given the public to understand is an article prepared by him, so that certain words which certainly contain elements of description have been declared by the courts to be valid trade-marks. Such is the case on 'Cottolene.'"

And in Scriven v. North, 134 Fed. 366, 376, 67 C. C. A. 348, 358:

"Courts cannot forbid the use of words, which, standing alone and in their ordinary signification, are common property, or of numerals, which all the world is free to use, or of labels and stamps of common form, in which no one can claim an exclusive use, even though it may be shown that careless persons may in some instances be misled; but if they are so collocated and stamped upon an article in manifest imitation of a form previously adopted by another as a means of distinguishing his goods, with the deceptive purpose to mislead, disguising one's own goods thereby, and inducing the public to be-

lieve that they are the goods of another, such conduct falls under the ban. The general principle that no man has a right to pass off his goods as and for the goods of another is broader than the rules applicable to strict trademark. In this country this principle is generally designated as 'unfair competition in business.' "

So it is that words which carry with them the truth of the assertion and correctly describe the article are not susceptible of being appropriated as trade-marks; but if these words, by long association with a particular person in the manufacture or sale of a particular article, have acquired a secondary meaning, that denotes in the mind of the public the association as well as the article of commerce, their original proprietorship will be protected against any unfair methods to appropriate the use of them by others in palming off their goods for those of the rightful manufacturer.

Without discussing the subject in particular, I am of the opinion that the bill of complaint states sufficient to require an answer of the defendant. It is very much like the case of Putnam Nail Co. v. Bennett et al. (C. C.) 43 Fed. 800, decided by Mr. Justice Bradley, on the circuit bench. There the bill averred that:

"The defendants, well knowing the premises, and that your orator alone possessed the right to bronze horseshoe nails as a trade-mark, and to sell the same under the trade-name, as above set forth, have willfully disregarded the same, and, intending to deceive purchasers and defraud the public and to injure your orator, have for some time past been engaged, and are still engaged, in the sale of horseshoe nails, not manufactured by your orator, but similar in appearance to those manufactured by your orator, which they have had bronzed and sold as bronzed horseshoe nails, under the name of 'Imperial Bronze,' or other names, all containing the word 'bronze'; and the said nails, so bronzed and sold by the defendants under the said name, have been and are of inferior quality to the nails bronzed and sold by your orator under their lawful trade-mark; and purchasers and consumers have been and are deceived and misled into buying the articles so bronzed and sold by the defendants in the belief that they were and are of the manufacture of your orator."

And the eminent jurist said of it:

"There is here a substantial fact stated—that the public and customers have been, by the alleged conduct of the defendants, deceived and misled into buying the defendants' nails for the complainant's. That averment is amplified in paragraph 4 of the bill."

He goes further to speak of the nature of the trade-mark, but finally holds that the bill is sufficient to require of the defendants an answer thereto.

So, in the present case, I am of the opinion that the allegations of the bill are amply sufficient to require of the defendants an answer, that the whole matter may be spread upon the record and determined upon the merits of the cause.

The demurrer will therefore be overruled, and it is so ordered.