**STANDARD OIL CO. OF NEW YORK v. STANDARD OIL CO. OF MAINE, Inc., et al.**

No. 919.

District Court, D. Maine, S. D.

March 10, 1930.

N. W. Thompson, of Portland, Me., and Stafford Smith, of New York City, for plaintiff.

Bradley, Linnell & Jones, of Portland, Me. (C. C. Jones, of Portland, Me., of counsel), for defendants.

PETERS, District Judge.

This is a bill in equity brought to prevent by injunction the use of the name "Standard Oil Company" or "Standard Oil" by the defendant in connection with the oil business. The plaintiff is a New York corporation. The defendant, the Standard Oil Company of Maine, Inc., is a Maine corpo-

ration. The individual defendants, citizens of Maine, are only nominal parties, and the word "defendant" will be hereafter used describing the Maine corporation. The defendant filed a demurrer and also an answer. The answer contains a formal denial that the jurisdictional amount of $3,000 is involved. The bill, however, has the requisite jurisdictional averment in this respect, and, as there was no formal plea to the jurisdiction, it was not incumbent upon the plaintiff to offer proof in support of it. Bitterman v. L. & N. R. Co., 207 U. S. 205, 224, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693. Also it appears from the evidence not only that the immediate damage to the plaintiff, should the defendant proceed to put into execution its alleged designs, would be more than $3,000, but that the value of the rights which the plaintiff seeks to have protected is much more than that sum. Hunt v. New York Cotton Exchange, 205 U. S. 332, 27 S. Ct. 529, 51 L. Ed. 821.

The plaintiff has been engaged in the oil business in Maine for more than thirty-five years, having early complied with the laws of Maine relative to foreign corporations intending to do business in the state. It has built up a large and profitable business, having hundreds of employees, thousands of customers, and much property used in connection with its business. It sells products of petroleum in practically every town and city in the state. It has acquired a high reputation for the soundness of its goods, and, by its methods of doing business and from large sums spent in advertising, has built up around its name an exceedingly valuable good will. In 1922 it registered with the secretary of state the name "Standard," the name "Socony," and certain devices bearing those names, under the laws of Maine relating to the use of trade-marks and trade-names.

On September 26, 1929, the defendant corporation was organized under the laws of Maine for the purposes set out in its articles of association, the first two being as follows:

"(1) To deal in petroleum and its products, including gasoline.

"(2) To produce, purchase, transport, store and sell crude oil and its products, including gasoline, and to aid other companies and parties in the production, transportation, storage, manufacture and sale of the same."

Seven shares of stock were subscribed for, the balance of the capital, ninety-three shares, being placed in the treasury. A president, treasurer, clerk and three directors were elected. Up to this time no business has been engaged in by the defendant. This bill was filed November 30, 1929, and a preliminary injunction issued December 20, 1929.

It appears that persons having a place of business in New York City who were instrumental in forming the defendant corporation have formed similar corporations, with similar purposes, in some six other states, all with a nominal amount of capital and all bearing the name "Standard Oil Company," with suffixes indicating the state of incorporation.

The plaintiff now and for many years has done business in New York and New England exclusively. There are various other "regular" Standard Oil Companies, so called, representing the break-up of the original company, doing business in the other states, but no two of them in the same territory—at least using the Standard Oil name.

The plaintiff asks for relief on the ground that the word "Standard" is a trade-name under the law of Maine which no other person in the same business may use, and, especially, that the name "Standard Oil Company" has acquired a secondary meaning connected with and standing for the goods and business of this plaintiff to such an extent that it is entitled to protection against unfair competition in its fraudulent or improper use by another in the same line of activity.

I cannot doubt that the parts of the plaintiff's name referred to have acquired a secondary meaning such as to create rights that will be protected against unfair use and competition. It can hardly be argued that the use in New York or New England of the name "Standard Oil Company" or "Standard Oil" would not commonly be taken to refer to the Standard Oil Company of New York, the long-established and well-known company, and the only company of that name which many thousands of persons have come in contact with in that territory up to now. It would certainly result in the utmost confusion if another oil company should do business in that territory using the name "Standard Oil Company" as the defendant here has used it. That confusion would just as certainly result in damage to the plaintiff. The defendant, being a newcomer, has nothing to lose and everything to gain by the confusion, and when it appears, as it does here, that the name was adopted as a corporate name by a newly organized corporation, manifestly with the purpose of appropriating without consideration the most

conspicuous and well-known name in the business the defendant was organized to engage in, the exact situation is presented which authorizes the intervention of a court of equity.

"The good will in business is a valuable asset, and in modern commercial life it is frequently built upon a trade-name. Any trade-mark or name not unlawful in itself nor against public policy, which has become of a pecuniary value or a business advantage, becomes a property right, and, as such, is entitled to the protection afforded by the courts.

"In his recent and admirable treatise, the Historical Foundations of the Law Relating to Trade-Marks, Frank I. Schechter, A. M., J. D. of the New York Bar, quoting from authorities, says: 'A large part of what is most valuable in modern life seems to depend more or less directly upon "probable expectancies." It would seem to be inevitable that courts of law, as our system of jurisprudence is evolved to meet the growing wants of an increasingly complex social order, will discover, define, and protect from undue interference more of these "probable expectancies." Among these "probable expectancies" which courts of law are being called upon with ever increasing frequency to define and protect is good will, i. e., the expectation of the trader or manufacturer that he will be undisturbed in the custom or trade which the merits of his wares or the ingenuity of his advertising have attracted from the consuming public.'" American Agricultural Chemical Co. v. Moore (D. C.) 17 F.(2d) 196, 199; Lynn Shoe Co. v. Auburn-Lynn Shoe Co., 100 Me. 461, 62 A. 499, 4 L. R. A. (N. S.) 960; Globe-Wernicke Co. v. Brown (C. C.) 121 F. 185; Richmond Remedies Co. v. Dr. Miles Medical Co. (C. C. A.) 16 F.(2d) 598; Buzby v. Davis et al. (C. C. A.) 150 F. 275, 10 Ann. Cas. 68.

█ Indeed the defendant's counsel hardly contests the proposition that it could not properly engage in business under its present name in this state, against the objection of the plaintiff, but says that it should not now be enjoined from doing so because it has not started business. I think this is too narrow and quibbling a barrier to interpose against the clearly proper remedy which the plaintiff promptly invoked before the defendant could go to any considerable expense in launching its proposed business. At the present time, the defendant, before using its corporate name in connection with any business activities, can change it by the simple and inexpensive process of passing a vote and filing a copy in the office of the secretary of state. Equity favors the prompt assertion of rights, and it is for the benefit of both parties in such a case as this that the matter should be settled in limine.

█ In deciding what weight shall be given the defendant's objection, it is important to consider its situation and standing, based upon its good faith or otherwise in selecting this particular name. As bearing upon this point, it should be noted that the organizers of this defendant, out of all the names available, selected the most valuable and best known one in the business, that of a company which would have legitimate reason to object. In the selection by the defendant of a corporate name with distinguishing marks so slight that, as the evidence shows, practically all customers would confuse it with the plaintiff's, they committed what amounts to a willful and continuing trespass upon the property rights of the plaintiff. That this trespass was no accident, but apparently part of a general movement in various parts of the country, is shown by the organization of similar corporations with similar names in many other states. It does not lie in the mouths of the owners of the defendant in a court of equity to assert that the plaintiff proceeded too soon to protect itself from further encroachment.

The point discussed was raised in the case of Cleveland Opera Co. v. Cleveland Civic Opera Association, and decided by the Court of Appeals of the state of Ohio in 22 Ohio App. 400, 411, 154 N. E. 352, 355, in which the court says, in a case not so strong as this:

"It is contended by defendant that no act has been done which can be interpreted into unfair competition, because it has done nothing but file its articles of incorporation and receive a certificate therefor. There has been neither organization by the stockholders nor the election or creation of a board of directors, nor has there been an election of officers, and, further, there has been no attempt in any manner to transact business. From these facts it is claimed that no act of unfair competition can follow.

"However, this is a case in equity, and one of the vital principles thereof is that equity aids the vigilant. Under the record the plaintiff has been doing business with the public under its charter for some four years, not only in its own locality, but in other places throughout the country. Instead of waiting for positive and overt acts

on the part of the defendant before proceeding, it acted under the principle of equity just mentioned and applied to the courts for injunctive relief, and at a juncture when no injury can arise to the defendant if the relief be granted except the amendment, upon application, of its name, to eliminate the similarity complained of.

"In judging the equity of this case a vital element to consider is the fact that no substantial harm can result to defendant, and it is not so clear that the plaintiff, under the record of the case, is so fortunately situated.

"Holding these views, the prayer of the petition is hereby granted."

The language used in the case of American Tobacco Co. v. Polacsek (C. C.) 170 F. 117, 121, is pertinent:

"The logic of the situation may be briefly stated. Either the defendant is endeavoring to profit by the reputation of McAlpin's tobacco or he is not. If it be true that he is making this attempt he should be stopped in limine, if, on the other hand, he is only selling his goods on their merits he does not need the same trade-mark as the complainant."

In the somewhat similar case of Philadelphia Trust, etc., Co. v. Philadelphia Trust Co. (C. C.) 123 F. 534, 544, the court uses language which could be used here equally well:

"The conclusion is almost irresistible that the selection of the name of the defendant was unjust and inequitable, in that it was intended that the defendant should unfairly take advantage of the credit, good name, reputation and business standing of the complainant, as an old and successful corporation, to the prejudice of the complainant and in fraud of the public." British-American Tobacco Co. v. British-American Cigar Stores Co. (C. C. A.) 211 F. 933, Ann. Cas. 1915B, 363; Willys-Overland Co. v. Akron-Overland Tire Co. (D. C.) 268 F. 151.

The defendant relies somewhat on the case of Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A.) 201 F. 510, but that case is not authority on the point that the injunction was sought too soon because it went off on the ground that the complainant had never made or sold commercial ice cream which was the business for which the defendant was incorporated; the complainant's name had not acquired a secondary meaning in the ice cream business.

In the instant case, it being perfectly clear, and practically admitted, that the plaintiff's name has acquired a secondary meaning in the oil business which will entitle it to protection against its use by another company in the same business, and the defendant having begun what—unexplained as it is—appears to be a deliberate trespass upon the plaintiff's right to the exclusive enjoyment of the fruits of the reputation and good will it has built up around its name, it is not conceived that the plaintiff has brought his bill too early or otherwise than with commendable promptness such as is required in equity.

The defendant has raised several minor defenses, not apparently much relied upon, and not necessary to allude to other than to say that their merit is not sufficient to defeat the purpose of the bill.

The bill will be sustained and an injunction granted.