## BENEFICIAL INDUSTRIAL LOAN CORPORATION et al. v. KLINE et al.

No. 12336.

Circuit Court of Appeals, Eighth Circuit.

Dec. 11, 1942.

Rehearing Denied Jan. 12, 1943.

J. R. McManus, of Des Moines, Iowa (M. H. Johnson, of Des Moines, Iowa, and D. M. Kelleher, of Fort Dodge, Iowa, on the brief), for appellants.

Edward E. Baron, of Sioux City, Iowa (A. H. Bolton, of Sioux City, Iowa, on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This is a civil action brought by Beneficial Industrial Loan Corporation and Personal Finance Company of Iowa, corporations organized under the law of Delaware, against Earl L. Kline, doing business under the name and style of Personal Finance Company, Melvin W. Ellis, Superintendent of Banking of the State of Iowa, Personal Loan Society, Inc., and Mutual Loan Company, corporations organized under the law of Iowa, to enjoin all defendants, except Ellis, from using the name "Personal Finance Company" within the State of Iowa and for an accounting for any profits derived by defendants for using such name in connection with Earl L. Kline's small loan business and for damages sustained by plaintiffs by reason of defendants' use of such name. All defendants, except Ellis, joined in a motion: first, that Personal Finance Company of Iowa be dropped because of misjoinder; second, to dismiss as to Beneficial Industrial Loan Corporation for the reason that that company is not

using the name "Personal Finance Company"; third, to dismiss as to Personal Finance Company of Iowa because it is not in competition with defendant Kline; and fourth, to dismiss as to the two corporate defendants because no cause of action is stated as to either. After submission of this motion, the trial court on his own motion dismissed the complaint for want of jurisdiction on the ground that it appeared to the court from the allegations of the complaint that the sum in controversy did not exceed $3,000. This appeal is taken from the consequent judgment of dismissal.

Plaintiffs' complaint is detailed and voluminous and includes allegations that: Beneficial Industrial Loan Corporation, referred to as B. I. L. C., is a corporation owning all of the stock of more than two hundred and fifty subsidiary corporations through which it conducts a nationwide small loan business. Most of these subsidiaries are incorporated under the name Personal Finance Company, or have that name as part of their corporate name. The Personal Finance Company of Iowa is one of such subsidiaries and has since December 10, 1940, under license issued by the Superintendent of Banking, operated a small loan business in Iowa with offices at Davenport.

Plaintiff B. I. L. C. and its predecessors have since about 1924 used the name Personal Finance Company as the base of the corporate name of the subsidiaries now owned by plaintiff. Through its advertising and business methods the B. I. L. C. and its subsidiaries have built up good will and a reputation of service, financial responsibility and fair dealing throughout the United States. It has expanded so that today, through its subsidiaries, B. I. L. C.'s volume of business is in excess of $100,000,000 per annum and its total capital is approximately $75,000,000. It is one of the largest small loan corporations in the world. It appears that B. I. L. C. has expended large sums of money, running into millions of dollars, in promoting the name "Personal Finance Company" in connection with its small loan business. This advertising was done through newspapers, magazines, by direct mail, and by network radio broadcasting, and has covered the State of Iowa as well as the rest of the United States. In addition, some 500,000 credit cards have been issued to customers throughout the United States whose course of dealing with plaintiff and subsidiaries justified the extension of credit, many of such customers being migratory.

It is also alleged that for several years prior to 1934, B. I. L. C. had subsidiaries operating in Iowa under the following names: Personal Finance Company of Cedar Rapids, Personal Finance Company of Council Bluffs, Personal Finance Company of Dubuque, and Personal Finance Company of Sioux City. In 1934 these subsidiaries were liquidated and B. I. L. C. withdrew from the state of Iowa until 1940, when the plaintiff Personal Finance Company of Iowa obtained a license to and did engage in the small loan business in Iowa.

The gist of this portion of the complaint is that B. I. L. C. and its subsidiaries had acquired through long usage, advertising and promotion, the exclusive right to the tradename "Personal Finance Company", and that such name was identified with B. I. L. C. and its subsidiaries, and that the plaintiffs have the exclusive right to the use of said name throughout the United States and in Iowa.

It is alleged that defendant Earl L. Kline is an individual who since January 2, 1941, has been engaged in the small loan business in Iowa under the name Personal Finance Company, with offices at Sioux City. As to the two corporate defendants, Personal Loan Society and Mutual Loan Company, it is alleged that though they have no interest in the trade name "Personal Finance Company" they wrongfully assert such interest in themselves and have assumed to authorize Mr. Kline to use that name in his business.

Plaintiffs allege that Mr. Kline chose the name "Personal Finance Company" with the intent and purpose of attempting to appropriate to his own use the value of plaintiffs' good will and reputation by leading the borrowing public to believe that he was identical with or identified with plaintiffs and their business. This conduct, it is asserted, constitutes unfair competition, has inflicted injury upon plaintiffs and will continue to do so unless Mr. Kline is restrained from further use of the trade name.

Plaintiffs in seeking reversal of the trial court's order, contend that the complaint stated facts disclosing that the amount in controversy exceeded the sum of $3,000. The bill also alleges directly that the sum in controversy exceeds the jurisdictional amount. Such a general al-

legation when not traversed is sufficient, unless it is qualified by other facts which so detract from it that the court must dismiss on its own or on defendants' motion. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. Though the allegations of jurisdictional facts are not challenged by the defendant, the court may insist that such facts be established, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. In this case the trial court was of the opinion that the plaintiffs' claim as stated was one which they could neither jointly nor severally be legally permitted to sustain by evidence, and therefore the general allegation of a jurisdictional sum in controversy was of no avail.

■ Though the case is here on the issue of jurisdiction, a determination of that issue requires an inquiry into the question of whether the use by the defendant Kline of the name "Personal Finance Company" would establish a cause of action in favor of the plaintiffs because of any right previously acquired in the use of that name. In order for such a cause of action to arise, the term "Personal Finance Company" must be a term subject to appropriate and exclusive use and a proper subject of property right which has a value recognized by law and which the law will protect.

■ That a corporate name or trade name may become a property right is well established by authority. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Standard Oil Co. of New York v. Standard Oil Co. of Maine, D.C., 38 F.2d 677; American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Iowa Auto Market v. Auto Market & Exchange, 197 Iowa 420, 197 N.W. 321. The concept is well stated in Standard Oil of New York v. Standard Oil of Maine, supra [38 F.2d 679]:

"The good will in business is a valuable asset, and in modern commercial life it is frequently built upon a trade-name. Any trade-mark or name not unlawful in itself nor against public policy, which has become of a pecuniary value or a business advantage, becomes a property right, and, as such, is entitled to the protection afforded by the courts."

■ It was the trial court's view, however, that the term in controversy here was generic and merely descriptive of the business engaged in. There is a rule that such a term cannot constitute a trade mark or trade name the right to the exclusive use of which will be secured to one in preference to others engaged in the same business. Iowa Auto Market v. Auto Market & Exchange, 197 Iowa 420, 197 N.W. 321, and cases there cited. But plaintiffs alleged in their complaint that this trade name had by long and extensive use acquired a secondary meaning as identifying the parent company and its subsidiaries and the business thereof in Iowa, and throughout the United States. The law recognizes that such a secondary meaning may be acquired.[1]

In Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co., 167 Iowa 202, 149 N.W. 184, 186, though it was held that the similarity in the names of the corporations was not such as to cause confusion, the court said: "Even where the name, symbol, or device used is not one that can be protected as a trade name or mark, equity will protect one in the use of it, where it has, by long use, obtained a secondary meaning, as designating the goods of one particular person, and where, by the use of it, the public has come to know his goods by that name or symbol."

---

[1] "Words or names which have a primary meaning of their own, such as words descriptive of the goods, or the place where they are made, or the name of the maker, and which are not capable of exclusive appropriation as a trade mark, may nevertheless by long use in connection with the goods or business of a particular trader come to be understood by the public as designating the goods or business of that particular trader. Such words have both a primary and secondary meaning. In their primary sense, they are 'publici juris', and all the world may use them, but they must be used in such a way as not to falsely convey the secondary meaning, for this would constitute unfair competition as tending directly to pass off the goods or business of one man as and for that of another. This is what is known as the doctrine of secondary meaning and its perception by the courts was the genesis of the law of unfair competition distinguished from technical trade-marks." 63 Corpus Juris 393, § 102.

Of like import is the following language in Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850, 852, where Knox had engaged in business under the name Western Auto Salvage Company: "Confined to their primary meaning * * * words which are merely descriptive of the merchandise are not capable of exclusive appropriation. But, where words of that character have been used so long and so exclusively by a trader or distributor with reference to his merchandise that they are generally understood to mean and denote such merchandise, they acquire a secondary meaning quite apart from their primary significance and he may restrain their perfidious use by another if it causes deceit and injures his business."

Other cases uphold the doctrine of secondary meaning: Armstrong Paint and Varnish Works v. NuEnamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Coca Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189; Standard Varnish Works v. Fisher, Thorsen & Co., C.C., 153 F. 928; Rubber & Celluloid Products Co. v. Star Brush Mfg. Co., Inc., D.C., 22 F.2d 415; American Products Co. v. American Products Co., D.C., 42 F.2d 488; Indian Territory Oil and Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711.

■ It seems clear that plaintiffs alleged sufficient facts in their complaint to state a cause of action in their favor within the doctrine of secondary meaning. Plaintiffs set out at great length the manner in which the name "Personal Finance Company" came to be adopted and the type of business organization used. It is alleged that the term was used over a long period of years and on a nationwide scale. A large clientele was accumulated which came to know the reputation and business practices of the organization. By extensive advertising campaigns the general public was likewise informed of the services and accommodations of the organization. In the present state of the record these allegations must be taken as true.

■ We must assume that as a result of this widespread business activity of the B. I. L. C. and its nationwide advertising, good will of very great value has been established. That there has been opportunity for the establishment of a reputation for financial responsibility, business integrity and fair dealing. That such reputation is identified with the name "Personal Finance Company." That although it is descriptive in nature, the term has acquired a secondary meaning in Iowa and elsewhere in the United States, which adheres to this organization, and the public has come to know the lending services of B. I. L. C. by that name. Under such circumstances, when another engages in the same kind of small loan business under the name Personal Finance Company confusion will arise and the public will be deceived. The junior organization becomes identified with the senior organization, with the result that an impostor feeds upon the fruits of the labors and expenditures of the others and reaps where the others have sown. Such is the essence of unfair competition. "Personal Finance Company" has become B. I. L. C.'s trade name, an intangible property interest and right of great value, and defendants have no investment or right in it.

■ The appellees stress a contention that it should be inferred from the complaint that B. I. L. C. is a mere holding company and that its only interest in the small loan business and the name "Personal Finance Company" is that of a stockholder in corporations which carry on such business and use the name, and cases are cited which establish that a stockholder in a corporation is not a proper party to maintain suit against third persons on a cause of action which belongs to the corporation and in which he has no interest except through his stock ownership. The point is not without difficulty and we are not cited to cases deemed controlling of the situation here presented. But it appears from the allegations of the complaint that it is B. I. L. C. which has controlled the policies and the business conduct and directed and made the vast advertising expenditures which altogether and as a whole produce the intangible property right in the name which is involved in this suit. If B. I. L. C. had done the things which it alleges that it did through individual instead of through corporate agents, there could be no question of its interest in the name and good will or of its being the proper party to sue to protect the same. Instead, it has employed and directs its subsidiary corporations, in which it owns all of the stock, to carry out its policies and execute the local transactions from day to day. The somewhat intangible property right thus brought into existence is obviously national (and even international) in its scope and must inhere in continuous national (and international) user.

As the elements that make it up, directing the unified policy, maintaining continuous unified control and carrying on the national (and international) advertising under unified plan, are all things said to be done by B. I. L. C., we think the allegation of the complaint that B. I. L. C. has a property right in the name of great value may not be disregarded and that the allegations are sufficient to show that it is a proper party plaintiff in the action. The right which it asserts is not the same right that could be claimed by any single subsidiary corporation. None of such merely local agencies could claim contributions or user of the same kind or extent as that of B. I. L. C. Therefore unless the right of B. I. L. C. to maintain the action is recognized and sustained, the anomaly would be presented of the existence of a private right that cost and is said to be worth millions of dollars without any party in interest competent to sue in the courts for its protection. There is no question that the employment of corporate agencies by plaintiff to build up and maintain the small loan business under the name in question is in all respects lawful, nor is there any reason to deny the protection of law to the very great property right that has resulted. We think it clear that B. I. L. C. is shown to be a party in interest entitled to maintain the action. Its subsidiary corporation joined as co-plaintiff also has an interest, different in its extent and value but provable on the trial of the action.

■ The matter in controversy here is the trade name in question and the sum in controversy is not alone the damage which is claimed to have been done by the defendants but is the value of the property interest in that trade name. In Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711, 713, where the defendant was restrained from using the words "Indian Territory" as part of its name, the court said:

"The test in determining the amount in controversy in a case of this kind presenting a continuing wrong to an established business growing out of unfair trade practices, is not the immediate pecuniary damages arising from the wrongful acts. It is the value of the business or the right to be protected; and business reputation or good will is an intangible asset to be taken into consideration in ascertaining the extent and value of the business or right. See Bitter-

man v. Louisville & Nashville R. R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973."

In Harvey v. American Coal Co., 7 Cir., 50 F.2d 832, 834, a case involving unfair competition in the use of the name "Pocahontas" by coal dealers, the court said: "It is the good will—the right to the exclusive use of the name—which is endangered, and the bare statement of the facts conclusively indicates a value many times larger than the jurisdictional amount."

■ The allegations in the complaint at bar likewise adequately show the amount in controversy to be many times in excess of $3,000.

Many other issues were raised both by plaintiffs and defendants in the briefs and in oral argument, but they go to the merits of the case and their disposition is not essential to this decision. The question here to be determined is whether plaintiffs' complaint put in controversy the requisite jurisdictional amount, and we hold that it does.

The order of the trial court is reversed and the case remanded for further proceedings.