## LOCAL LOAN CO. v. LOCAL FINANCE CORPORATION.

### Civil Action No. 832.

District Court, E. D. Wisconsin.

Aug. 29, 1944.

Elmer W. Roller, of Milwaukee, Wis., and Newton, Wilhelm & Kenny, Joseph E. Newton, and James V. Kenny, all of Chicago, Ill., for plaintiff.

Giles F. Clark, of Milwaukee, Wis., and Werner, Clemens & Miller, and Edward H. Clemens, all of Sheboygan, Wis., for defendant.

DUFFY, District Judge.

The complaint alleges unfair competition. In 1908 Fred B. Snite started a small loan business in Chicago using the name Local Loan Company. The venture prospered and Snite and his wife subsequently expanded their operations in Chicago and elsewhere. By 1928 they were operating five offices in Chicago under the name of Local Loan Company; they also operated several offices in other States through wholly owned corporations. They then incorporated under the name of Local Loan Company, and the corporation took over the business and assets of the above mentioned Chicago offices. During this period and since then plaintiff has engaged in vigorous advertising campaigns, special emphasis being placed upon the first word of its name, "Local." Slogans were adopted to impress this part of its name upon the public, examples of which are "Local Gives You What You Want," "Originated by Local, Recommended by Thousands," "Local, Single Signature Method," "Local's Confidential Low Cost Service."

Sport broadcasts, particularly of baseball games, were sponsored by the plaintiff in the years 1936 to 1939. The services of two well known sports announcers, Pat Flanagan and Bob Elson, were utilized over radio stations WBBM and WGN located in Chicago. These programs could be heard in Wisconsin in Sheboygan, Manitowoc, Fond du Lac, West Bend, and elsewhere. Plaintiff's nickname, "Local," was frequently reiterated in these broadcasts.

On October 2, 1939, plaintiff qualified to do business as a foreign corporation in Wisconsin; and on April 11, 1940, it obtained a license from the State Banking Commission under the provisions of the Wisconsin Small Loans Act, Laws 1933, c. 347, to operate a small loan office in Milwaukee. Thereafter it obtained additional licenses to operate in Kenosha and Superior. Up to the present time it has continued to operate its Milwaukee and Kenosha offices under the name of Local Loan Company. Plaintiff spent $28,500 in advertising solely within Wisconsin since it commenced operations in this State; this does not include radio, newspaper and other advertising outside the State, a portion of which reaches the attention of Wisconsin residents. The increase in volume of plaintiff's business is indicated by the amount of money loaned: it was $276,000 in 1940 and mounted to $1,225,000 in 1943.

When this action was commenced in 1942, plaintiff was operating 35 offices in Illinois, Minnesota, Wisconsin, Kentucky, New York, Washington, Oregon, and California. For the past four years its annual net profits have averaged $850,000, and its total assets on December 31, 1943, were more than $12,000,000. Since its incorporation plaintiff has expended in excess of $2,000,000 in advertising, with emphasis upon the word "Local."

About five months after plaintiff was licensed by the State Banking Commission to operate a small loan company in Wisconsin, the defendant was incorporated under the laws of Wisconsin; and two and one-half months thereafter, to wit, on November 20, 1940, defendant was granted a license to conduct a small loan business at Sheboygan. After operating in that city defendant established offices in Fond du Lac, Manitowoc, and West Bend, the latter city being approximately thirty-seven miles from Milwaukee. Defendant has between $300,000 and $400,000 outstanding in small loans.

A hearing was held by the Banking Commission of Wisconsin upon defendant's application for a license to operate in Sheboygan. Plaintiff appeared by Attorney Lee and objected to the use by defendant of the word "Local" in its name. The spokesman for the defendant, who became its president, represented: "This stock will be taken by very few customers and will not be offered publicly and will not be offered outside to very few even in the county." The attorney for the Banking Commission stated, "As I understand it, this business is local, want to confine it to local capital and manager," which was confirmed by defendant's representative who responded, "Entirely local from Sheboygan." The attorney for the Banking Commission then stated: "Mr. Lee, I don't think you are before the proper tribunal. After all, there is nothing in our law which says anything about the name, and I think we would be exceeding or abusing our discretion and exceeding our authority if we did anything. I suppose you might have cause for an injunction through court action to restrain." Thereupon a license was issued for the defendant to operate in Sheboygan. On October 4, 1940, plaintiff wrote to defendant protesting the use of the word "Local" in defendant's name. Another letter of protest was written April 5, 1941, after defendant had expanded to Manitowoc and West Bend, wherein legal action by plaintiff was threatened. On January 31, 1942, the defendant advertised 7,200 shares of its stock for sale to the public and on February 21, 1942, plaintiff again wrote a letter of protest to the defendant. In September, 1942, this action was commenced.

The small loan business, as its name implies, is one of loaning small sums of money to necessitous borrowers. Due to their circumstances and lack of business experience, most of such borrowers are peculiarly susceptible to imposition; so the small loan business is affected with a public interest and in most States is subject to strict regulation.

The testimony shows that the plaintiff enjoys an excellent reputation in the small loan field. It is one of the largest companies in this line of endeavor, and has had a very rapid growth. The defendant likewise expanded rapidly. Witnesses have testified as to satisfactory dealings with it. The records of this court disclose a criminal prosecution against defendant for an alleged violation of the Bankruptcy Act.

11 U.S.C.A. § 1 et seq., in 1942. The trial held before this court at Milwaukee resulted in an acquittal. Mention is here made of that action because if the verdict had been one of guilty, undoubtedly great harm would have been done to the plaintiff which, as hereinabove indicated, operates an office in Milwaukee.

Companies operating in the small loan field often are referred to by the first word of their name, such as "Household," "Citizens," "Local," "Personal," etc. The words "Loan" and "Finance" are used interchangeably, the public not distinguishing between them, as are the words "Company" and "Corporation." Plaintiff has come to be known in the small loan field as "Local" to public officials, social agencies, competitors, borrowers and to the public generally. The word "Local" has for many years signified the plaintiff company and its services in those States in which it operates.

The defendant has also emphasized the word "Local" in its advertising. In 1941 it advertised in a Hartford newspaper, "Borrow Money the Local Way." A similar ad was used in Manitowoc in 1942. Defendant has engaged in radio advertising, often emphasizing the name "Local," particularly over radio station WHBL, Sheboygan, which has a large listening audience in eastern and central Wisconsin. It has also sponsored a radio pragram over this station featuring the Sheboygan Redskins, a nationally known basketball team.

Like defendant who has established offices in West Bend, Sheboygan, Manitowoc, and Fond du Lac, plaintiff has clients in these communities. It has over 150 accounts in 45 Wisconsin cities outside of Milwaukee, some as far distant as Antigo. Defendant does not intend to confine its business to the cities in which it has offices, and admits it would accept applications for loans from borrowers in Wisconsin living elsewhere in the State. Both plaintiff and defendant have made plans to expand in Wisconsin after the conclusion of the war. Considerable confusion in the public mind already exists, and if the contemplated expansion programs are carried out, then confusion will be more confounded.

The issue is: Did the defendant, operating in the small loan business field, have the right to adopt and use the word "Local" as a part of its name after the plaintiff, engaged in business of an identical character, had already used the same word for many years previous as a part of its name, and had advertised its services extensively with particular emphasis on that part of its name, and had naturally and normally expanded its operations into Wisconsin before the defendant was incorporated?

In order for plaintiff to maintain its cause of action, the words "Local Loan Company" must be a term subject to exclusive use and be a proper subject of property right which has a value recognized by law and which the law will protect. That a corporate name or trade name may become a property right is well established. Beneficial Industrial Loan Corp. v. Kline, 8 Cir., 132 F.2d 520, 523; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Standard Oil Co. of New York v. Standard Oil Co. of Maine, D.C., 38 F.2d 677.

In Beneficial Industrial Loan Corp. v. Kline, supra [132 F.2d 524], the court quotes with approval the following from Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850, 852: "'Confined to their primary meaning * * * words which are merely descriptive of the merchandise are not capable of exclusive appropriation. But, where words of that character have been used so long and so exclusively by a trader or distributor with reference to his merchandise that they are generally understood to mean and denote such merchandise, they acquire a secondary meaning quite apart from their primary significance and he may restrain their perfidious use by another if it causes deceit and injures his business.'"

The word "local" is a geographical or descriptive term. It probably could not be made the subject of a technical trade-mark, but in the small loan business, when used alone or in conjunction with the words "Loan Company," it has acquired a secondary meaning. The plaintiff was first in the field in Wisconsin. Before the defendant had expended any money for operation or advertising, it was aware that the plaintiff was operating in this State in the small loan field and that it objected to the use by the defendant of the word "Local" in its name. The late comer in an established field is under special duty to avoid confusion. John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 85 F.2d 586; Weiner et al. v. National Tinsel Manufacturing Co., D.C., 35 F.Supp. 771; Northam Warren Corp. v. Universal Cosmetic Co.,

7 Cir., 18 F.2d 774. Even a family name cannot be used so as to mislead and confuse the public. Horlick's Malted Milk Corp. v. Horlick, D.C., 40 F.Supp. 501; L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142.

▮ The fact that the State of Wisconsin granted a corporate charter to the defendant did not in any way guarantee that defendant had the full right and privilege to use the word "Local" in its name regardless of any previously existing right in another. General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64; Household Finance Corp. of Delaware v. Household Finance Corp. of West Virginia, D.C., 11 F.Supp. 3; Liberty Life Assurance Soc. v. Heralds of Liberty, 15 Del. Ch. 369, 138 A. 634; Grand Lodge, I. B. & P. O. E. v. Grand Lodge, I. B. & P. O. E., 4 Cir., 50 F.2d 860.

In Household Finance Corp. of Delaware v. Household Finance Corp. of West Virginia, supra, 11 F.Supp. at page 6, the court quotes the following from Nims on Unfair Competition and Trade-Marks, 3d Ed., p. 256: "'The sum of the whole matter is this: If a plaintiff can demonstrate that the defendant's use of its corporate name is likely to cause confusion or to misrepresent, the defendant must change its name * * * and inasmuch as an affirmative duty to differentiate itself from the plaintiff rests upon defendant, the failure so to do is evidence of fraud.'"

The defendant argues that the very use of the word "Local" by the plaintiff in its now coast-to-coast business is a fraud or imposition upon the public. But this is a "pot calling the kettle black" defense. Defendant itself represented in 1940 that it was only to be a local finance company, but has subsequently extended its operation to cities 40 or 50 miles distant, and the president of the defendant company promises further expansion after the war. While at first blush "local" might give the impression the company is locally owned, yet the public does not expect to find gold in "Gold Dust" or ivory in "Ivory Soap," and it is doubtful whether customers are obtained by plaintiff because they believe the money they receive by signing notes is furnished by local capital.

▮▮ As the word "Local" has acquired a secondary significance in Wisconsin in the small loan field, and as its use by defendant has caused confusion and is likely to cause greater confusion in the minds of the public, and as the plaintiff was the first in the field, it is entitled to the relief requested. It is well established that relief will be afforded where there is a possible danger to reputation and credit arising from a confusion of identity where the parties are engaged in a business of a kindred character. Adam Hat Stores, Inc., v. Scherper, D.C., 45 F.Supp. 804; Brass Rail, Inc., v. Ye Brass Rail of Massachusetts, Inc., D.C., 43 F.Supp. 671.

▮ The defendant has raised the defense of res judicata, claiming that the plaintiff should have appealed from the determination of the State Banking Commission that it had no power or authority to pass on the question of the defendant's right to use the word "Local" as part of its corporate name. It is considered that this defense as well as the defense of laches is without merit.

Judgment may go for the plaintiff.