HUMBLE OIL & REFINING COMPANY,
a corporation, Esso, Incorporated, a cor-
poration, and Standard Oil Company, a
New Jersey corporation, Plaintiffs,

v.

AMERICAN OIL COMPANY, a corpora-
tion, and Standard Oil Company, an
Indiana corporation, Defendants.

No. 63 C 251(2).

United States District Court
E. D. Missouri, E. D.

Sept. 29, 1966.

See also D.C., 224 F.Supp. 909.

Walter R. Mayne, Nelson W. Hartman
and Thos. R. Schwarz, Fordyce, Mayne,
Hartman, Renard & Stribling, St. Louis,
Mo., Forrest M. Darrough, Dillard Baker,
Houston, Tex., Francis X. Clair, New
York City, Dugald S. McDougall and
Theodore R. Scott, McDougall, Hersh &
Scott, Chicago, Ill., for plaintiffs.

Coburn, Croft & Kohn, St. Louis, Mo.,
John W. Sherman, Richard J. Farrell,
L. B. Lea, and Ernest L. Godshalk, Wal-
ter T. Kuhlmey, Reuben Hedlund, Kirk-
land, Ellis, Hodson, Chaffetz & Masters,
Chicago, Ill., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, District Judge.

This proceeding was brought under
and pursuant to Rule 60(b) of the Fed-
eral Rules of Civil Procedure to modify
an injunction decree of this Court entered
in 1937 in case No. 11407, which was
affirmed on appeal in Esso, Inc. v. Stand-
ard Oil Co. (Indiana), 98 F.2d 1 (8 Cir.
1938). Under the 1937 decree "Esso,
Incorporated, its agents, servants, repre-
sentatives, employees, attorneys, confed-

erates, and all others acting for, with, through or under it and each of them," were perpetually enjoined from using in the petroleum industry in the States of Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, North Dakota, Oklahoma, South Dakota, Wisconsin and Wyoming "the term Esso alone or in combination with other names, terms, letters, marks, symbols, or syllables," or the trade names or trademarks Standard, Standard Oil, Standard Oil Company, S O, or S O C O, or "any names, terms, marks or symbols colorably similar thereto in sound, appearance, significance of meaning."

Plaintiffs in this proceeding are Humble Oil & Refining Company, a Delaware corporation (herein called Humble), Esso, Inc., a corporation, and Standard Oil Company, a New Jersey Corporation (herein called Standard Oil [New Jersey]). Humble is wholly owned by Standard Oil (New Jersey), and Esso, Inc., is wholly owned by Humble. Esso, Inc., was a defendant in the 1937 case.

Defendants in this proceeding are The American Oil Company, a Maryland corporation (herein called American), and Standard Oil Company, an Indiana corporation (herein called Standard Oil [Indiana]), which owns all of the capital stock of American. Standard Oil (Indiana) was the plaintiff in the 1937 case and obtained the above-mentioned injunction.

Plaintiffs herein seek to modify the 1937 injunction to permit Humble to use the name and mark "Esso" in the petroleum industry in the fourteen midwest states covered by the decree and in the State of Nebraska. Following the entry of the 1937 injunction, Standard Oil (Indiana) began marketing in Nebraska. These fifteen states are hereafter referred to as the midwest.

Plaintiff Humble is now the owner of record of the federal registration of the trademark "Esso". Plaintiff is prohibited from using it in the midwest by virtue of the 1937 decree.

To understand the problems of this litigation, a brief history of the Standard Oil Company is necessary. The Standard Oil trust began in 1870. By 1899 Standard Oil was the leading and dominant name in the American oil industry. A holding company, Standard Oil of New Jersey, was formed and through this holding company various Standard Oil Companies were controlled from 1899 to 1911. During this period of time the name "Standard Oil", by extensive national advertising and excellent products, achieved a nationwide reputation. In 1911 the Supreme Court held that the method of operation of Standard Oil violated the Sherman Antitrust Act and ordered the company dissolved. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). After 1911 the courts determined that various Standard Oil Companies had the exclusive right to use the Standard name and marks in their own territories, as this Court so held in 1937 in relation to fourteen midwest states.

The courts throughout the United States have uniformly held that the particular Standard Oil Company which first and continuously used the name "Standard" and derivatives thereof in a particular trade area had the exclusive right to use that name and all derivatives therefrom to the exclusion of the other Standard Oil Companies and to the exclusion of all strangers who attempted to use the name. See Standard Oil Company (Sohio) v. Standard Oil Company (Indiana), 141 F.Supp. 876 (D.Wyo. 1956), aff'd 252 F.2d 65, 76 A.L.R.2d 600 (10 Cir. 1958); Standard Oil Co. of Colorado v. Standard Oil Co. (Indiana), 72 F.2d 524 (10 Cir. 1934), cert. den. 293 U.S. 620, 55 S.Ct. 216, 79 L.Ed. 708; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 56 F.2d 973 (10 Cir. 1932); Esso Standard Oil Co. v. Standard Oil Co. of New England, 170 F.Supp. 71 (D.N.H.1958); Standard Oil Co. (Indiana) v. Standard Oil of North Dakota, 123 F.Supp. 227 (D.N.D.1954); Esso Standard Oil Co. v. Bazerman, 99 F.Supp. 983 (E.D.N.Y.1951); Standard Oil of New York v. Standard Oil of Maine, 38 F.2d 677 (D.Maine 1930), aff'd

1 Cir., 45 F.2d 309; Standard Oil Co. (Indiana) v. Michie, 34 F.2d 802 (E.D. Mo.1929). The one exception to this universal holding was found in the case of Humble Oil & Refining Co. v. Standard Oil Co. (Kentucky), 229 F.Supp. 586 (D.C.Miss.1964), where Standard Oil (Kentucky) had been distributing Esso products under a licensing agreement which had expired. Thereafter, Humble began using Esso products in the five southeast states area, Alabama, Georgia, Florida, Kentucky and Mississippi, in its own right. The district court held that if any confusion resulted, it was the fault of Standard Oil (Kentucky), and it could not now complain. This case was reversed by the Fifth Circuit Court of Appeals on July 1, 1966, Standard Oil Co. (Kentucky) v. Humble Oil & Refining Co. 363 F.2d 945 (5 Cir. 1966), and an application for certiorari is now pending in the United States Supreme Court.

The plaintiffs contend essentially that the marketing practices and conditions of the defendants and the habits of the motoring public have changed so much since 1937 that the continued enforcement of the 1937 decree is inequitable and works an extreme hardship upon the plaintiffs; that it deprives the motoring public of the competition that would be engendered in the event the decree were modified to permit the introduction of plaintiffs' products in the midwest under the name "Esso". Plaintiffs further contend that the introduction in the midwest of plaintiffs' products under the name "Esso" would cause no confusion. Plaintiffs contend that practices of the plaintiffs since 1937 are changed in such a manner that the motoring public is now able to distinguish between the products of the plaintiffs and those of the defendants. This Court finds at the outset that the plaintiffs herein stand before this Court of Equity with unclean hands. Their appeal to the conscience of the Chancellor has fallen on stony ground. Relief to them would be denied on this ground alone, even had they met the burden of proof required with clear and convincing evidence. In addition, the plaintiffs have not met the burden of proof on any of their essential contentions.

In 1937 Standard Oil (Indiana) was doing business as an operating company and as a holding company. It was operating on its own name in the fourteen states of the midwest and through subsidiaries in other parts of the United States. Its subsidiary, the Utah Oil Refining Company, operated in Utah, Idaho and Nevada, and after 1937 began to market in Washington and Oregon. A subsidiary, Pan-Am Southern Corporation, operated in Louisiana, Mississippi, Alabama and Tennessee. A subsidiary, the defendant in this case, American, operated in New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, West Virginia, North Carolina, South Carolina, Georgia, Florida, Ohio and the District of Columbia. In 1937 these subsidiaries were not wholly owned by defendant Standard Oil (Indiana). Between 1937 and 1961 Standard Oil (Indiana) acquired all of the outstanding stock of these subsidiaries and merged them into a single wholly-owned subsidiary, defendant, American. Since 1961 Standard Oil (Indiana) has operated only as a holding company and a policy-making company.

From 1937 to 1961 the defendants' subsidiaries used a variety of brand names of gasoline, service station color schemes, and other marks and symbols. Prior to 1961 Standard Oil (Indiana) began to adopt the torch and oval as an I D sign on the service stations of its subsidiaries. It also began to adopt certain slogans in connection with radio, television and other advertising. The slogans were: "You expect more from _____ and you get it" and "As you travel, ask us". The red, white and blue color scheme was adopted at various times by its subsidiaries prior to 1961 and was uniformly adopted by all of them in 1961. Since 1937 to date, the service stations of defendants in the midwest have had the name "Standard" on the stations and in the I D sign. Since 1937 to date, the defendants' color scheme in the mid-

west has been red, white and blue on the service stations. From 1937 to date, the defendants have used at various times and during various intervals in the midwest the initials "S O" and "S O C O" on road maps, on radio and television advertising, on newspaper and magazine ads, on trucks, and certain products such as charcoal starter, Solite lighter fluid and on gasoline pumps. There is no indication from the evidence that the defendants have ever abandoned or intended to abondon the use of the letters "S O" or "S O C O".

Since 1961 the I D sign of defendant American has continued to carry the name "Standard" in the torch and oval at all filling stations in the midwest. Outside the midwest in the territory of the other Standard Companies, the torch and oval has carried in the I D sign the name "American". Atlas tires and other Atlas products are sold and have been sold at the service stations of defendants, of plaintiffs, and of all the other Standard Oil Companies throughout the United States.

The name "Standard Oil" was employed by the plaintiffs' predecessors in plaintiffs' territory in the east at the time of the decree in 1937 and the name "Standard" was continued in use in that eastern territory until a few years ago. The trademark "Esso" was a word developed from the letters "S" and "O", which were the initials of Standard Oil. From 1925 to date, the name "Esso" has been used in the eastern part of the United States and this name "Esso" has been and is now used in Canada, Europe, Africa, South America, Asia, and in other parts of the world.

From 1937 to 1960 plaintiffs acquired a number of subsidiary companies, including Carter Oil Company, Pate Oil Company, Oklahoma Oil Company of Chicago, and Gaseteria Oil Company of Indianapolis. In 1944 Standard Oil Company of Louisaina was merged into Standard Oil Company of New Jersey, and in 1948 there was a merger of these companies with Standard Oil Company of Pennsylvania, Colonial Beacon Oil and

Kesbec to form the Esso Standard Oil Company. In 1960 all of the operating companies of the plaintiffs were merged into the plaintiff Humble, a wholly-owned subsidiary of plaintiff Standard Oil (New Jersey). Prior to 1960 plaintiffs began to adopt throughout the country a uniform red, white and blue color scheme at their filling stations and the slogan "Happy Motoring". In 1948 plaintiffs adopted as their I D sign at the service stations in the United States in the territory where this could be used the word "Esso" in an oval. This was primarily in the eastern United States. From 1960 to date, the I D sign of the plaintiff Humble outside its eastern states territory has contained the name "Enco". The I D sign of "Esso" is used in other parts of the world as plaintiff's principal identification.

Since 1961 the I D sign of the plaintiff Humble has contained the word "Esso" in the five southeastern states of Standard Oil (Kentucky) territory, about which litigation is presently pending.

From 1948 to 1960 the name "Esso Standard Oil Company" was used in advertising throughout the east on radio, television, in newspapers, magazines, on gasoline pumps, trucks, maps and outdoor advertising. Since 1960 the I D sign of plaintiff Humble has been standardized to use the word "Esso" in an oval in the eastern states and the five southeastern states in which litigation is presently pending. Outside the eastern states, in the midwest and the west, the I D sign of plaintiff contains the word "Enco" in an oval. This name "Enco" was derived from "the leading *ENergy COmpany*".

The various Standard Oil Companies throughout the United States have used the name "'Standard" or some derivative thereof within their own exclusive territories. Outside their territories they have used other names and I D signs. Standard Oil (California) uses the name "Chevron" in other parts of the United States. Standard Oil (Ohio) uses the name "Boron" outside of Ohio. Each of these Standard Oil Companies has been very diligent in the protection of

the use of the name "Standard" and derivatives thereof within its exclusive territory.

Plaintiffs have filed objections to the use of any derivative of the name "Standard" or "Esso" relating to trademark matters pending before the Patent Office. They have advised by letter any interlopers within their territory that the name "Standard" or "Esso" cannot be used in their territory. In a number of cases where a letter did not stop the use of a name, they have filed suit. Their complaints have contained the allegations that "Esso" means "Standard". Plaintiffs have made the same allegations before the Patent Office on numerous occasions in their objections to certain trademark matters. Generally, the various Standard Oil Companies have tried to confine the use of the name "Standard" and derivatives thereof to their own territories. However, there has been some overlapping in relation to radio, television and split-run ads on national publications, resulting in a spilling over of advertising matter into each other's territory. Because of the fact that at one time there was only one Standard Oil Company and that company has been divided, a great number of persons are unaware that the Standard Oil Companies are, in fact, separate and distinct companies. This situation existed in 1937 and it exists today. In the middle west a number of surveys in evidence show that the name "Esso" means Standard Oil. As a matter of fact, outside the midwest plaintiffs have used on outdoor billboards a sign saying "Welcome to Tennessee where Esso means Standard Oil".

In 1954 Humble Oil and Refining Company, a Texas corporation, which at that time was a marketing subsidiary of plaintiff Standard Oil (New Jersey), settled its differences with Standard Oil (California), which were being litigated and the terms of this contract provided that the name or mark "Esso" may not be used in the States of New Mexico, Arizona, California, Oregon, Washington, Idaho, Utah and Nevada. In these states Standard Oil (California) claims the exclusive right to use the name and mark "Standard" and all derivatives thereof. Plaintiffs contend that it works a great hardship on them not to be able to use the name "Esso" throughout the United States. Even though this Court were to grant the relief they desire, it would appear that they could not use the name "Esso" in the western states nor can they use the name "Esso" in the southeastern states. This is one of the hardships which plaintiffs contend is being imposed upon them by this decree.

At the trial of this case witnesses for the plaintiffs stated that they had no objections to the defendants using the name "Standard" in the east. This testimony is in contrast to and not consistent with the many objections which the plaintiffs had made to the use by anyone, including defendants, of the name "Standard" in plaintiffs' eastern region.

Plaintiffs state that their inability to advertise one brand name nationwide prevents competition. They want to use the name "Esso" nationwide. This cannot be done. There is nothing to prevent plaintiffs from using the name "Enco" nationwide. Plaintiffs are now competing vigorously with defendants in the midwest and in other areas under the name "Enco".

In 1955 Standard Oil (Indiana) entered into an agreement with Standard Oil (California) concerning advertising in each other's territory. This agreement provides that the companies ·shall not use the name "Standard" in each other's territory. This agreement is not a division of territory as plaintiffs contend, but is merely a codification of what the courts have already decided the parties are entitled to have and use.

Among the changes which plaintiffs contend the Court could not foresee in 1937 is the extensive use of radio and television and the great increase in the mobility of the traveling public both by our interstate highway systems, by air travel, and the development of the use

of the credit cards. Plaintiffs contend this has caused the motoring public to recognize and distinguish the different Standard Oil Companies and particularly to distinguish "Esso" as being a separate and distinct company. There was some exchange of credit cards prior to 1937 and there is no question that this has increased greatly. At the present time, by and large, the various Standard stations throughout the country recognize and accept each other's credit cards. Radio was in its infancy in 1937 and television had not begun and there is no question that this has had an impact on the buying public. The traveling public has become more mobile, both by automobile and by air. But, this Court cannot say that such conditions were unforeseen by the Court in 1937 or that they constitute such a change that the injunction should be modified. The fact remains that the confusion which existed in 1937 continues to exist and the conditions which exist today are merely an extension of conditions that led up to the 1937 decree.

The plaintiffs introduced a survey conducted by the firm of Louis Harris & Associates, Inc. The essence of this survey concerning the midwest, according to Mr. Harris, is that the maximum association between "Esso" and "Standard" in the midwest is eighteen percent of the population.

Defendants introduced a survey conducted by Steuart Britt. The essence of his survey was that thirty percent of the people in the midwest associated "Esso" with Standard Oil.

In 1956 a survey was made by the advertising agency of McCann-Erickson. Of the persons responding in the midwest 44.9% thought that the gasoline sold at Esso was made by Standard Oil or a related company.

An attorney for the defendants interviewed 1,965 people in thirteen cities in the midwest and showed them a picture of an Esso station; 38% of these persons thought this station sold Standard Oil gasoline.

Whatever the precise percentage of confusion between the products of the plaintiffs and those of the defendants may now exist, taking only the evidence introduced by the plaintiffs as to confusion in its most favorable light, there is still too much confusion in the minds of the public for the Court to permit a modification of the 1937 decree.

In 1937 Standard Oil (New Jersey) had assets of approximately two billion dollars and annual net profits of approximately one hundred fifty million dollars. By 1964 the assets of Standard Oil (New Jersey) had increased to twelve and one-half billion dollars and its net profits had increased to over a billion dollars. Based on these figures, it would appear to the Court that the decree entered by this Court in 1937 has not only failed to work an extreme hardship upon the plaintiffs, it has hardly even caused them an inconvenience.

In 1956 defendant Standard Oil (Indiana) obtained an injunction from the District Court of Wyoming against the use by Standard Oil (Ohio), of the name "Sohio" in the midwest. This judgment was affirmed by the 10th Circuit Court of Appeals in 1958.

On March 21, 1960, Rufus S. Day, Jr., and Maurice Hanning, representing Standard Oil (Ohio), met with Einar B. Paust, Assistant General Counsel of Standard Oil (New Jersey), Francis X. Clare, Trademark Counsel for Standard Oil (New Jersey), Leslie D. Taggart, outside trademark counsel for Standard Oil (New Jersey), and Nelson Jones, general counsel of plaintiff Humble, in the office of Mr. Paust in New York.

This Court first heard of this meeting in a hearing on the supplemental bill during December 1964, and the Court's decision on that matter is reported at 239 F.Supp. 97. The testimony and proceedings on the supplemental bill were introduced in evidence and are a part of this proceeding. As a result of this hearing, the Court enjoined the plaintiffs from continuing a lawsuit in Oklahoma City, Oklahoma.

Mr. Day testified at both the hearing on the supplemental bill and at the trial of this cause. He stated that he made notes of the March 1960 meeting on the airplane returning to Cleveland, and a few days later his secretary typed up a memorandum from these notes. The memorandum was before the Court on the hearing on the supplemental bill and at the time of this trial. The essence of Day's testimony is that the attorneys for Standard Oil (New Jersey) proposed that Standard Oil (Ohio) cooperate with Standard Oil (New Jersey) and that Sohio start a station using the "Sohio" name in Esso territory and Esso start a station in Sohio territory using the "Esso" name and then that litigation be instituted with cross-claims, which would result in judicial decisions that there is no confusion between these names. On the basis of such decisions Standard Oil (Ohio) could use them in an attempt to get the Wyoming District Court decree modified. Standard Oil (New Jersey) would use such decisions in an attempt to get the 1937 St. Louis decree modified. An alternate proposal was that the names "Esso" and "Sohio" be used side by side and surveys be conducted to show that the public was not confused by the use of these names.

The hearing on the supplemental bill was held in December 1964. Francis X. Clare was present in the court room at the time of this hearing and did not take the stand to deny the testimony of Mr. Day. He later testified that the reason he did not take the stand at the hearing on the supplemental bill was on advice of counsel that this proceeding was not material to the main issues involved. It is remembered by the Court that in December 1964 discovery was going on between the parties and at that time plaintiffs did not know what evidence the defendants might secure relating to this meeting from the various files which the Court had ordered Standard Oil (New Jersey) to produce. By the time this case came on for a final hearing in January and February, 1966,

both parties knew exactly what would be introduced in evidence because of pretrial orders requiring a listing of documents, and discovery had been completed. At the time of the trial, Day and Hanning confirmed the testimony given by Day at the time of the hearing on the supplemental bill. All of the attorneys for the plaintiffs who attended the March 1960 meeting took the stand and categorically denied under oath that these suggestions for litigation had been made by them and stated that there had been no discussion whatsoever of litigation. It was called to the attention of plaintiffs' attorneys who took the witness stand that their testimony was in direct conflict with that of the attorneys for Standard Oil (Ohio). These witnesses were given an opportunity to reflect on their testimony and to change it, if they so desired. After reflecting, they reiterated their testimony. Plaintiffs' attorneys who testified, also testified that no notes were made by them and no memoranda were written by them as to what occurred at the March 1960 meeting. Standard Oil (Ohio) rejected the proposals made to them by plaintiffs' attorneys. After the meeting in March 1960, Humble entered Ohio but used the name "Enco" and not "Esso". The Court is of the opinion that the testimony of Day and Hanning is the truth.

■ The Court is of the opinion that the meeting in New York between the lawyers of Standard Oil (Ohio) and the lawyers of Standard Oil (New Jersey) is material and directly related to the instant litigation. The proposals made by plaintiffs' attorneys at the New York meeting were not legitimate attempts to solve business problems. Those proposals go beyond the point a lawyer may go in behalf of a client. A corporate employee and attorney may not attempt to deceive the courts to advance the interests of his employer. The proposals made in the New York meeting, coupled with the abortive suit in Oklahoma, which was stopped by this Court, and the testimony of plaintiffs' employees and lawyers in

denying the proposals, are condemned by this Court. Their conduct falls squarely within the doctrine of unclean hands. Even though the evidence presented by the plaintiffs were more convincing and even though plaintiffs had shown the Court by clear and convincing evidence that they were entitled to relief, no relief would be granted to them because of their conduct.

The leading case on the subject of modifying an injunction is United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and this case has been followed by the 8th Circuit Court of Appeals, see Bowdil Co. v. Central Mine Equipment Co., 216 F.2d 156 (1954). Justice Cardozo speaking for the Court at page 119 of the *Swift & Co.* case, 52 S.Ct. at page 464, supra, said:

"We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting * * *. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed * * *."

The use of the name "Standard" and all derivatives thereof belongs to Standard Oil (Indiana) in the midwest states as this Court held in 1937. To permit this decree to be modified on the evidence presented to this Court would cause the motoring public a great deal of confusion and would cause a substantial loss to the defendants. Their customers would not know the difference between the Standard torch and oval as used in the midwest and the Esso in the oval as used by the plaintiffs. The motoring public in the midwest would be buying plaintiffs' products thinking they were defendants'. The injunction of 1937 does not prohibit the plaintiffs here from competing with the defendants in the midwest. They are at liberty to build all the filling stations, sell all the gasoline and do anything else they want to do, under the name "Enco" or any other name they choose to adopt other than "Esso" or some derivative of the name "Standard Oil". This, they are and have been doing. They have suffered no hardship. While the defendants in this case have had some change in the use of the initials "S O" and "S O C O" from 1937 to the present date, there has been a substantial and continued use of these initials. In the early stages of this case the court reporters had great difficulty in determining whether the lawyers were saying "S O" or "Esso". When pronounced they sound identical. Both mean Standard Oil.

The test of losing the right to the use of a trademark may be by abandonment, non-use, laches, or acquiescence, and abandonment must be coupled with intent to abandon. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916). None of these has been shown by the evidence. No abandonment of the defendants' right or any intention to abandon the name "Standard" or its derivatives has been shown by the evidence.

Turning now to the 1960 meeting between plaintiffs' attorneys and the attorneys for Standard Oil (Ohio), and the subsequent conduct of plaintiffs' attorneys, does this fall within the doctrine of unclean hands? The courts have set out the guidelines for the doctrine of unclean hands on a number of occasions. The Supreme Court speaking through Justice Murphy in Precision Instrument Mfg. Co. v. Automotive Main-

tenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), said:

"The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. * * * Thus while 'equity does not demand that its suitors shall have led blameless lives,' * * * as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. * * *

" * * * Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor."

The conduct of the plaintiffs' attorneys in the 1960 meeting in New York was a long-range effort to get the St. Louis decree modified and the abortive suit brought by the plaintiffs in Oklahoma, which was stopped by this Court, and the testimony of plaintiffs' attorneys at the trial fall squarely within the doctrine of unclean hands. See also Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); Shaver v. Heller & Merz Co., 108 F. 821, 65 L.R.A. 878 (8 Cir. 1901).

A decree will be entered dismissing the plaintiffs' complaint and continuing the injunction granted by this Court in 1937.